James S. Bell (252662)
JAMES S. BELL, P.C.
2808 Cole Avenue
Dallas, TX 75204
Telephone: (214) 668-9000
Email: james@jamesbellpc.com
Attorney for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cv-00287-CKD |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** |
| MATTHEW H. PETERS, BAYVIEW SPECIALTY SERVICES LLC, COASTLINE SPECIALTY SERVICES LLC, STRAND VIEW CORPORATION, INNOVATIVE SPECIALTY SERVICES LLC, PARAGON PARTNERS LLC (D/B/A PARAGON MEDICAL PARTNERS), CARDEA CONSULTING LLC, PRAXIS MARKETING SERVICES LLC, PROFESSIONAL RX PHARMACY LLC, INLAND MEDICAL CONSULTANTS LLC (D/B/A ADVANCED THERAPEUTICS), PORTLAND PROFESSIONAL PHARMACY LLC, SUNRISE PHARMACY LLC, PROFESSIONAL 205 PHARMACY LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), SYNERGY MEDICAL SYSTEMS LLC (D/B/A SYNERGY RX), SYNERGY RX LLC (D/B/A SYNERGY RX), PRESTIGE PROFESSIONAL PHARMACY, JMSP LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), MPKM, LLC (D/B/A | |

1

PROFESSIONAL CENTER
PHARMACY), ONE WAY DRUG LLC
(D/B/A PARTELL PHARMACY),
PARTELL PHARMACY LLC,
OPTIMUM CARE PHARMACY INC.
(D/B/A MARBELLA PHARMACY),
GLENDALE PHARMACY LLC, and
LAKE FOREST PHARMACY (D/B/A
LAKEFOREST PHARMACY),

Defendants.

**NOTICE**

Notice is hereby given that Defendants make the following Motion to Dismiss which they propose to be heard on a date and time in a courtroom yet to be determined.

**MOTION**

Defendants hereby move to dismiss the Amended Complaint.

This motion is based on the memorandum and exhibits filed herewith, and the pleadings on file.

Dated: May 6, 2024

JAMES S. BELL, P.C.

/s/James S. Bell
James S. Bell
State Bar No. 252662
2808 Cole Avenue
Dallas, TX 75204
Telephone: (214) 668-9000
Email: james@jamesbellpc.com

*Attorney for Defendants*

# PROOF OF SERVICE

**United States of America v. Matthew H. Peters, et al.**
**Case No. 2:24-cv-00287-CKD**

**STATE OF TEXAS, COUNTY OF DALLAS**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Dallas, State of Texas. My business address is 2808 Cole Avenue, Dallas, TX 75204. On May 6, 2024, I served true copies of the following document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** on the interested parties in this action as follows:

> David A. Theiss
> Assistant United States Attorney
> Steven Tennyson
> Assistant United States Attorney
> 501 I Street, Suite 10-100
> Sacramento, CA  95814
> Telephone: (916) 554-2700
> Facsimile: (916) 554-2900
> Email: David.Thiess@usdoj.gov
> Email: Steven.Tennyson2@usdoj.gov
>
> *Attorneys for the United States of America*

**X      BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 6, 2024, at Dallas, Texas.

/s/Connor Nash
Connor Nash

James S. Bell (252662)
JAMES S. BELL, P.C.
2808 Cole Avenue
Dallas, TX 75204
Telephone: (214) 668-9000
Email: james@jamesbellpc.com
Attorney for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cv-00287-CKD |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT** |
| MATTHEW H. PETERS, BAYVIEW SPECIALTY SERVICES LLC, COASTLINE SPECIALTY SERVICES LLC, STRAND VIEW CORPORATION, INNOVATIVE SPECIALTY SERVICES LLC, PARAGON PARTNERS LLC (D/B/A PARAGON MEDICAL PARTNERS), CARDEA CONSULTING LLC, PRAXIS MARKETING SERVICES LLC, PROFESSIONAL RX PHARMACY LLC, INLAND MEDICAL CONSULTANTS LLC (D/B/A ADVANCED THERAPEUTICS), PORTLAND PROFESSIONAL PHARMACY LLC, SUNRISE PHARMACY LLC, PROFESSIONAL 205 PHARMACY LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), SYNERGY MEDICAL SYSTEMS LLC (D/B/A SYNERGY RX), SYNERGY RX LLC (D/B/A SYNERGY RX), PRESTIGE PROFESSIONAL PHARMACY, JMSP LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), MPKM, LLC (D/B/A | |

1

PROFESSIONAL CENTER PHARMACY), ONE WAY DRUG LLC (D/B/A PARTELL PHARMACY), PARTELL PHARMACY LLC, OPTIMUM CARE PHARMACY INC. (D/B/A MARBELLA PHARMACY), GLENDALE PHARMACY LLC, and LAKE FOREST PHARMACY (D/B/A LAKEFOREST PHARMACY),

Defendants.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................3

TABLE OF AUTHORITIES...........................................................................4

INTRODUCTION.........................................................................................6

ARGUMENT................................................................................................7

1. THE GOVERNMENT'S CLAIMS ARE UNTIMELY...............................7

2. THE GOVERNMENT MUST PLEAD ITS FCA CLAIMS WITH PARTICULARITY ...............................................................................8

   a. THE FCA PROHIBITS "FALSE CLAIMS;" NOT SCHEMES .............9

   b. FCA CLAIMS PREMISED UPON AKS VIOLATIONS MUST IDENTIFY THE CLAIMS RESULTING FROM THE ALLEGED KICKBACKS....................................................................10

   c. THE CONSPIRACY CLAIM MUST BE DISMISSED...................................................................11

   d. THE GOVERNMENT'S REVERSE FCA CLAIM FAILS....................................................................12

3. THE GOVERNMENT'S COMMON LAW CLAIMS ARE UNTIMELY....................................................................12

CONCLUSION ........................................................................14

PROOF OF SERVICE .................................................................15

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). ………..………..……….7

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)…………..7

*Godecke v. Kinetic Concepts, Inc*., 937 F.3d 1201 (9th Cir. 2019)………………………………..7

*United States v. Peters*, 3:19-cr-00601-HZ (D. Or. 2019)…………………………………………..7

*United States ex rel. Silingo v. Wellpoint, Inc*., 904 F.3d 667, 677 (9th Cir. 2018)……………….8

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.* , 637 F.3d 1047 (9th Cir. 2011)...8, 9

*Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662,, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008)…………………………………..………..…………..……….…………..……….9

*United States ex rel. Hopper v. Anton,* 91 F.3d 1261(9th Cir. 1996)………………………..…9

*U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014)……………..…9

*United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)…………………………………......…10

*United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011)…………………...10

*Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)………..10

*U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.,* 251 F. Supp. 2d 28 (D.D.C. 2003)…...10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003)………………………..11

*United States v. Athens Orthopedic Clinic P.A.,* 3:15-CV-122 (CDL) (M.D. Ga. Aug 15, 2022)…12

*Purcell v. Gilead Scis., Inc*., 439 F.Supp.3d 388 (E.D. Pa. 2020)………………………..…..…12

*United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc*., 906 F.Supp.2d 1264, (N.D. Ga. 2012)……………………………………………………………………………………13

*McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457 (2006)………………………….....13

*Filet Menu, Inc. v. Cheng*, 71 Cal.App.4th 1276 (1999)………………………………………13

*Bowden v. Robinson*, 67 Cal.App.3d 705 (1977)………………………………………………13

*United States v. Mead*, 426 F.2d 118 (9th Cir.1970)……………………………………….....13

**STATUTES**

Federal Rule of Civil Procedure 12(b)(6)…………………………………………………….…6

31 U.S.C. § 3729………..….….…...…..…..…...…..….……....….……...….……..6, 9, 11, 12

31 U.S.C. § 3731………..….…...…..…..…...…..….……....….…...….…..….……7, 8

42 U.S.C. § 1320………..….…...…..…..…...…..….……....….….…...…...…..,.….10

Code Civ. Proc., § 339, subd. (1)……...…..… ……...…..….……...…...…..……...…..13

Civ. Proc. § 338………..….…...…..…..…...…..….….……....….……...…..…...13

**<u>OTHER</u>**
1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1015, 1016, pp. 1104-1105)…...13

Defendants' Motion to Dismiss and
Memorandum of Law in Support
5
Case No. 2:24-cv-00287-CKD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Matthew Peters; JMSP, LLC; Paragon Partners, LLC; Innovative Specialty Services, LLC; Cardea Consulting, LLC; Coastline Specialty Services, LLC; Portland Professional Pharmacy, LLC; Sunrise Pharmacy, LLC; Professional 205 Pharmacy, LLC; Lake Forest Pharmacy, LLC; Bayview Specialty Services, LLC; Praxis Marketing Services, LLC; Prestige Professional Pharmacy, LLC; Optimum Care Pharmacy, Inc.; and Glendale Pharmacy, LLC ("Defendants") move to dismiss the Government's Amended Complaint in its entirely and in support thereof state as follows:

## **INTRODUCTION**

This is a False Claims Act ("FCA") case in which the Government alleges six claims against 24 defendants.

- Count I alleges a "presentment" claim under 31 U.S.C. § 3729(a)(1)(A) against Peters and the Defendant Pharmacies.[1]

- Count II alleges that all Defendants caused the presentment of false claim under 31 U.S.C. § 3729(a)(1)(A).

- Count III alleges a "conspiracy claim" under 31 U.S.C. § 3729(a)(1)(C) against all Defendants.

- Count IV alleges a so-called "reverse" FCA violation pursuant to 31 U.S.C. § 3729(a)(1)(G) against Peters and the Defendant Pharmacies.

- Count V alleges unjust enrichment against Peters.

- Count VI alleges a Payment by Mistake claim against Peters and the Defendant Pharmacies.

The Amended Complaint is 53 pages long and includes 303 numbered paragraphs. Nowhere, however, does the Government tell the Court that in 2019 it filed criminal charges against Peters including health care fraud, tax evasion, and identity theft. The Government also fails to mention that on July 6, 2020, Peters entered into a plea agreement with the Government which included factual details regarding a health care fraud scheme dating back to 2013 and 2014.

---

[1] For ease of reference, Defendants will refer to the categories or groups of Defendants in the same way the Government has done in the Amended Complaint.

1    Defendants respectfully submit that the Government fails to describe these underlying criminal

2    proceedings, because in so doing the Government is hiding the untimeliness of the civil claims it

3    brings in this case.

4        On top of this glaring omission, the Government constructs a case that is long on allegations

5    regarding an alleged fraudulent scheme, but short on particularized details about the who, what,

6    when, where, and how of the alleged false claims and conspiracy. As such, the Government fails to

7    meet the heightened pleading standard applicable to its claims. Therefore, the Amended Complaint

8    must be dismissed.

9                                            <u>**ARGUMENT**</u>

10       For the purposes of a motion to dismiss, the Court must take all of the factual allegations in

11   the complaint as true, but the Court is not required to accept a legal conclusion dressed as a factual

12   allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell*

13   *Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); and

14   *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019).

15   **1.   THE GOVERNMENT'S FCA CLAIMS ARE UNTIMELY**

16       A civil action brought to enforce the FCA must be brought within the longer of either (1)

17   six years of the date of the FCA violation; or (2) within three years after "the official of the United

18   States charged with responsibility to act in the circumstances" knew or reasonably should have

19   known of the violation, but not more than 10 years after the date of the violation. 31 U.S.C. §

20   3731(b).

21       Here, the Government brings a civil action against Peters and the other Defendants based

22   upon alleged violations of the FCA. What the Government fails to tell this Court is that on

23   December 19, 2019, the Government filed criminal charges against Peters in the United States

24   District Court for the District of Oregon. *See United States v. Peters*, 3:19-cr-00601-HZ (D. Or.

25   2019). The Indictment in the case is sealed, but it is apparent from the public docket that the

26   Government alleges health care fraud, tax evasion, and identity theft against Peters.

27       On July 6, 2020, Peters executed a plea agreement with the Government. *See* Exhibit A.

28   From the face of the plea agreement, it is apparent that the Government's allegations of health care

fraud date back to 2013 and 2014. Peters submits that the same allegations underpinning the Government's criminal charges gave rise to the Government's civil claims in this case. The Government's failure to make any reference to the criminal action is very telling.

Pursuant to Section 3731(b), the Government's FCA claims must be dismissed as untimely. First, the underlying FCA violations about which the Government complains occurred more than 6 years prior to the commencement of this case as demonstrated by the plea agreement and criminal proceedings deliberately omitted from the Government's civil complaint. Second, this case commenced more than 3 years after "the official of the United States charged with responsibility to act in the circumstances" knew or reasonably should have known of the violation. In this regard, the latest the three-year clock could have commenced was July 6, 2020, when Peters entered into the plea agreement. Third, it has been more than 10 years since the violations occurred in 2013 and 2014. The Government's civil complaint obfuscates the timing of events by omitting reference to the criminal proceedings and highlighting more recent alleged correspondences from 2018 and 2019.

For this reason, the Government's FCA claims must be dismissed as untimely. Similarly, the pendent common law claims (Count V: Unjust Enrichment as to Peters and Count VI: Payment by Mistake as to Peters and the Defendant Pharmacies) are based upon the same factual allegations as the FCA claims. As such, the pendent common law claims (for which the Government fails to identify the applicable law other than "common law") also should be dismissed as timely.

## 2. THE GOVERNMENT MUST PLEAD ITS FCA CLAIMS WITH PARTICULARITY

Claims asserting fraud, including claims pursuant to the FCA, must comply with the heightened pleading standard set forth in Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (holding that Rule 9(b) applies to FCA claims). To satisfy this requirement, a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637

F.3d 1047, 1055 (9th Cir. 2011). A claim under the False Claims Act requires a showing of "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." For the conspiracy claim, the plaintiff must show that the defendants "agreed that [a] false record or statement would have a material effect on the Government's decision to pay [a] false or fraudulent claim." *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 673, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008).

### a. The FCA Prohibits "False Claims," Not Schemes

The FCA prohibits the submission of false claims to the Government for payment and making false statements material to such a claim. *See* 31 U.S.C. § 3729(a)(1)(A). Similarly, the FCA prohibits "reverse" false claims wherein the wrongdoer prevents the Government from collecting what it is owed. *See* 31 U.S.C. § 3729(a)(1)(A). The three FCA subsections at issue in the Amended Complaint create civil liability where a defendant: (a) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); (b) "conspires to commit a violation of" another subsection of the FCA, *id*. § 3729(a)(1)(C), or (c) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government," *id*. § 3729(a)(1)(G).

Significantly, the FCA does not seek to punish fraudulent schemes or schemes generally; rather, FCA liability is created by the actual submission of a claim or use of a false statement on which the Government ultimately makes payment. *See United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266 (9th Cir. 1996) (""the Act attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.'…What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false."); *U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014) ("The FCA is not concerned with regulatory noncompliance. Rather, it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money. Accordingly, the FCA generally attaches liability, not to the underlying fraudulent activity, but to the claim for payment.")

(internal citations omitted); *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) ("[T]he critical question is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme.") (citing *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).

### b. FCA Claims Premised Upon AKS Violations Must Identify the Claims Resulting from the Alleged Kickbacks

The Government bases its FCA claims upon alleged underlying violations of the AKS. The AKS makes it illegal to "knowingly and willfully offer[ ] or pay[ ] any remuneration (including any kickback, bribe, or rebate) ... to any person to induce such person" to "purchase or ... recommend purchasing" a drug that is covered by a federal health care program. 42 U.S.C. § 1320a–7b(b)(2). Further, the AKS prohibits "knowingly and willfully solicit[ing] or receiv [ing] any remuneration (including any kickback, bribe, or rebate)" "in return for purchasing ... or recommending purchasing" a drug covered by a federal health care program. *Id.* § 1320a–7b(b)(1). By its own terms, the AKS creates FCA liability only for claims "resulting from" a violation of the AKS: "[A] claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g).

Therefore, to establish causation for FCA liability, the Government must plead with particularity the link between the alleged kickback scheme and specific false claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (citation omitted)); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (stating that a complaint that is "devoid of specific allegations with respect to each defendant" and "lump[s] together all of the defendants in their allegations of fraud" should be dismissed); *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.,* 251 F. Supp. 2d 28, 35 (D.D.C. 2003) (dismissing FCA claims because the complaint alleged a kickback scheme but did not "link [the] scheme to claims for payment made to

the United States").

While the Amended Complaint is long on allegations regarding an alleged fraudulent scheme, it falls short regarding the requisite particularized details about the who, what, when, where, and how of the alleged false claims and conspiracy. For example, there are 24 defendants named in the Amended Complaint. Yet, the Amended Complaint collapses the defendants into categories, such as the "Pharmacy Defendants," the "Management Service Organization Defendants" (also referred to as the "Defendant MSOs"), and the "Marketing Entity Defendants." In so doing, the Amended Complaint conflates the allegations regarding the alleged misconduct and fails to provide particularized allegations on a defendant-by-defendant basis.

Further, while the Amended Complaint identifies some physicians and investors, there are very few details regarding the alleged individuals involved, such as who they are, what they did, and when they committed misconduct. Moreover, the same few names pop up again and again in a feeble attempt to paint the veneer of particularized allegation. At bottom, the allegations are completely insufficient to satisfy the requisite particularized fraud allegations by 24 defendants.

In the same vein, the Amended Complaint alleges that sale representatives received unlawful commissions, but fails to identify few, if any, of the sales representatives, the unlawful commissions received, and how the unlawful commission tie up to impermissible kickbacks on anything other than a superficial, 30,000-foot level.

In sum, the Government fails to meet the requisite pleading requirements, and the Amended Complaint must be dismissed.

**c. THE CONSPIRACY CLAIM MUST BE DISMISSED**

The Government alleges in Count III that all Defendants conspired to cause the presentation of false or fraudulent claims in violation of the FCA. 31 U.S.C. § 3729(a)(1)(C). The Government's claim fails to satisfy Rule 9(b)'s pleading standard, which requires that a plaintiff plead facts relating to the conspiracy. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003). Here, the Government's allegations focus on Peters, while lumping together the Defendant Pharmacies, Defendant MSOs, and Defendant Marketing Entities together. In so doing, the Government pleads nothing more than a litany of alleged misconduct by Peters in concert with

himself. Moreover, for the same reasons the Government has failed to plead the underlying fraud with particularity, it also has failed to plead with particularity conspiracy to commit that same fraud. Therefore, Count III must be dismissed.

### d.  THE GOVERNMENT'S "REVERSE" FCA CLAIM FAILS

In Count IV, the Government alleges Peters and the Pharmacy Defendants violated Section 3729(a)(1)(G), which proscribes "improperly avoid[ing] . . . an obligation to pay or transmit money or property to the Government." This "reverse" FCA claim fails because the Government fails to identify an obligation for Peters and the Pharmacy Defendants to pay the Government. Instead, the Government's theory is that Peters and the Pharmacy Defendants incurred an obligation to pay the Government by allegedly causing the submission of a false claims. In so doing, the Government impermissibly ignores the distinction between Sections 3729(a)(1)(A) and (G) by turning any false claim for payment from the Government into avoidance of an obligation to make payment to the Government. Courts have rejected such "redundant" FCA claims. *See, e.g., United States v. Athens Orthopedic Clinic P.A.,* 3:15-CV-122 (CDL) (M.D. Ga. Aug 15, 2022) ("A claim under § 3729(a)(1)(G) is redundant unless it is independent of affirmative false claims that are actionable under § 3729(a)(1)(A) and § 3729(a)(1)(B)."); *Purcell v. Gilead Scis., Inc*., 439 F.Supp.3d 388 (E.D. Pa. 2020) (dismissing Section 3729(a)(1)(G) claim as "redundant of Section 3729(a)(1)(A) and Section 3729(a)(1)(B) claims where the claims "uniformly follow[ed] the same theory": defendant caused the United States to pay false claims); *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc*., 906 F.Supp.2d 1264, 1272–73 (N.D. Ga. 2012) ("[T]he purpose of a reverse false claim [under 31 U.S.C. § 3729(a)(1)(G) ] is 'not to provide a redundant basis to state a false statement claim' but to create a separate liability where there is a clear obligation to return an overpayment."). Moreover, as discussed, the false claims on the Government basis its "reverse" claims were not pled with the requisite particularity. As such, Count IV should be dismissed.

### 3.  THE GOVERNMENT'S COMMON LAW CLAIMS ARE UNTIMELY

In addition to its FCA claims, the Government alleges two the pendent common law claims: Count V: Unjust Enrichment as to Peters; and Count VI: Payment by Mistake as to Peters and the Defendant Pharmacies. In alleging these claims, the Government fails to state what common law

upon which it bases these claims and why that common law applies. For this reason, Counts V and VI are deficient and should be dismissed for failure to state a claim.

Assuming California law applies, unjust enrichment is a remedy, not a true separate cause of action. *See McKell v. Washington Mut., Inc.*, (2006) 142 Cal.App.4th 1457, 1490 ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1015, 1016, pp. 1104-1105).) Therefore, the statute of limitation for unjust enrichment in California depends on the facts of the case and the underlying cause of action. For example, under California law, a two-year statute of limitation applies to an unjust enrichment claim based on a quasi-contract. *See* Code Civ. Proc., § 339, subd. (1*); Filet Menu, Inc. v. Cheng* (1999) 71 Cal.App.4th 1276, 1280; *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 718. As another example, a three-year statute of limitations would apply for a fraud claim (*see* Civ. Proc. § 338(d)), while a four-year statute of limitations might apply in other circumstances (*see* Civ. Proc. § 338(d)). In the instant case, the Government fails to allege an underlying California common law claim by which the timeliness of its unjust enrichment claim may be determined.

Similarly, the Government's claim of payment by mistake is untimely. Payment by mistake is a common law doctrine. *United States v. Mead*, 426 F.2d 118, 125 (9th Cir.1970). The United States may recover on a claim of payment by mistake if it shows that payments were made "under an erroneous belief which was material to the decision to pay." *Id*. at 124. As with the unjust enrichment claim, the Amended Complaint fails to tie the common law request for payment by mistake to an underlying California common law claim.

Presumably, the Government has not made any underlying California common law claims because such claims would be untimely. Instead, the Government alleges the California common law claims of unjust enrichment and payment by mistake to prop up the FCA claims. Assuming for the sake of argument that federal statutory claims can be enhanced by state common law claims, the underlying FCA claims upon which the Government relies are untimely as discussed above. Therefore, the California common law claims alleged in Counts V and VI must be dismissed as untimely.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order granting Defendants' Motion to Dismiss, dismissing the Amended Complaint, and providing for such further relief to which Defendants may be entitled.

Dated: May 6, 2024

JAMES S. BELL, P.C.

/s/James S. Bell
James S. Bell
State Bar No. 252662
2808 Cole Avenue
Dallas, TX 75204
Telephone: (214) 668-9000
Email: james@jamesbellpc.com

*Attorney for Defendants*

# PROOF OF SERVICE

**United States of America v. Matthew H. Peters, et al.**
**Case No. 2:24-cv-00287-CKD**

**STATE OF TEXAS, COUNTY OF DALLAS**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Dallas, State of Texas. My business address is 2808 Cole Avenue, Dallas, TX 75204. On May 6, 2024, I served true copies of the following document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** on the interested parties in this action as follows:

> David A. Theiss
> Assistant United States Attorney
> Steven Tennyson
> Assistant United States Attorney
> 501 I Street, Suite 10-100
> Sacramento, CA  95814
> Telephone: (916) 554-2700
> Facsimile: (916) 554-2900
> Email: David.Theiss@usdoj.gov
> Email: Steven.Tennyson2@usdoj.gov

*Attorneys for the United States of America*

**X** **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 6, 2024, at Dallas, Texas.

/s/ Connor Nash
Connor Nash

# Exhibit A



**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Ryan W. Bounds
Assistant U.S. Attorney
Ryan.Bounds@usdoj.gov
(503) 727-1141
*Reply to Portland Office*

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Billy J. Williams, United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

July 6, 2020

Whitney P. Boise, Esq.
Josh B. Ewing, Esq.
Boise, Matthews, Ewing LLP
1050 SW Sixth Avenue, Suite 1400
Portland, OR 97204

      Re:   *United States v. Matthew H. Peters*
             Case No. 3:19-cr-00601-HZ
             Plea Agreement Letter

Dear Counsel:

1.     **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2.     **Charges**: The defendant agrees to waive indictment and to plead guilty to the Superseding Information, which charges him in Count 1 with Health Care Fraud in violation of Title 18, United States Code, Section 1347, and in Count 2 with Tax Evasion in violation of Title 26, United States Code, Section 7201.

3.     **Penalties**: The maximum penalties for Count 1, Health Care Fraud, are 10 years in prison, a fine of $250,000 (or, if greater, twice defendant's gross gain or victim's gross loss), and 3 years of supervised release. The maximum penalties for Count 2, Tax Evasion, are 5 years in prison, a fine of $250,000 (or, if greater, twice defendant's gross gain or the IRS's gross loss), and 3 years of supervised release. In addition, defendant must pay a $100 fee assessment for each felony count of conviction. Defendant agrees to pay the total fee assessment of $200 by the time of entry of guilty plea or explain to the satisfaction of the Court why this cannot be done.

4.     **Dismissal/No Prosecution**: The USAO agrees to dismiss the Indictment returned in this case and to forgo any additional charges against defendant stemming from or relating to either (1) the operation of his compounding pharmacy businesses before January 1, 2020, or (2) the tax evasion conduct charged in Count 2 of the Superseding Information. The foregoing assurances are predicated on two conditions: First, all of the essential facts underlying such charges must be

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 2
May 20, 2020
_____

known to the USAO at the time of this agreement and, second, defendant must be convicted and sentenced in conformity with this agreement.

5.    **Sentencing Factors**:  The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a).  Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

6.    **Elements of the Offenses**:   In order for defendant to be found guilty of Health Care Fraud as alleged in Count 1 of the Superseding Information, the government must prove the following elements beyond a reasonable doubt:

> First, defendant knowingly executed a scheme or plan to defraud CVS Caremark by means of false or fraudulent representations;

> Second, those false or fraudulent representations related to a material fact;

> Third, CVS Caremark was a "health care benefit program," that is, a "public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual";

> Fourth, defendant's scheme or plan related to the delivery of or payment for health care benefits, items, or services; and

> Fifth, defendant acted willfully and with intent to defraud.

> In order for the defendant to be found guilty of Tax Evasion as alleged in Count 2 of the Superseding Information, the government must prove the following elements beyond a reasonable doubt:

> First, defendant took an affirmative act constituting an attempt to evade or defeat a tax or the payment thereof;

> Second, defendant acted willfully; and

> Third, additional tax was due and owing.

> The defendant stipulates that uncontested and admissible evidence of his relevant conduct as summarized in paragraph 7, *infra*, establishes each of the foregoing elements beyond any reasonable doubt.

7.    **Factual Basis and Relevant Conduct**:  Defendant stipulates that the following is a true and accurate summary of his offense conduct.  He further agrees and avers that every statement

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 3
May 20, 2020

herein is true and correct and that the government could prove every statement beyond a
reasonable doubt at trial, including through evidence of these admissions.

Count 1—Health Care Fraud:

a) By not later than January 2014 and continuing through at least November 2015,
defendant owned and operated a group of compounding pharmacies, including
two in Portland, Oregon, doing business as Professional Center Pharmacy and
Professional Center 205 Pharmacy (collectively "PCP");

b) PCP sought reimbursement from CVS Caremark, an Arizona-based pharmacy
benefits manager and a "health care benefit program" as defined in 18 U.S.C.
§ 24(b), in amounts totaling approximately $3.4 million for medication PCP
purportedly dispensed between April 1, 2014, and May 15, 2015;

c) As a result of those requests for reimbursement, CVS Caremark paid PCP nearly
$1.69 million;

d) In mid-2015, CVS Caremark audited the above-described claims for
reimbursement and ultimately identified discrepancies potentially requiring the
reversal of payments on approximately 185 claims for amounts totaling
approximately $242,287;

e) More than fifty of the discrepancies—relating to claims totaling more than
$59,000—arose from PCP's lack of required records documenting beneficiaries'
receipt of the medications;

f) On or about October 19, 2015, in an effort to resolve these discrepancies,
defendant submitted to CVS Caremark 41 written attestations that had been
purportedly executed (using unique electronic signatures) by the above-referenced
beneficiaries, confirming their receipt of the medicines for which PCP had
obtained reimbursement;

g) When defendant submitted those attestations, defendant knew that the
beneficiaries had not executed them, because he had signed the beneficiaries'
names himself without first obtaining their authorization to do so; and

h) Defendant submitted the forged attestations to avoid CVS Caremark's rescission
of the $59,000 in disputed reimbursements and to avoid PCP's suspension from
the CVS Caremark network.

Count 2—Tax Evasion

i) For tax years 2014 through 2017, defendant earned gross income of at least
$13,832,187.26 primarily from the operation of PCP and other compounding
pharmacies defendant owned or controlled in concert with others; and

j) During the years 2014 through 2017, defendant took the following affirmative
steps among others to conceal the true amount of his income, taking each step
with the specific aim of evading the assessment of personal income tax due to the
IRS in amounts totaling more than $5.4 million:

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 4
May 20, 2020

i.  Beginning in September 2013 and continuing to mid-November 2016, defendant diverted more than $3.3 million in pharmacy revenue to his personal use in bank accounts and property developments in Belize. To conceal this income from the IRS, defendant characterized the diverted funds as operating expenses on his pharmacies' books, failed to disclose his personal use of the funds to his tax return preparer (thereby causing the filing of returns that falsely omitted the personal income), and failed to disclose his interest in any foreign bank accounts to the IRS as required by law;

ii. In 2015 and 2016, defendant diverted $766,388 in revenue from his pharmacies to an entity called LML Shores LLC by depositing third-party checks payable to the pharmacies into a bank account he had created for LML Shores LLC. In 2015, defendant deposited to the LML Shores LLC bank account $368,817 in checks made payable to his pharmacies. In 2016 defendant deposited another $397,571 in checks made payable to his pharmacies. Defendant intended the diverted pharmacy income for his personal use, but he did not inform his tax return preparer about this diverted income, thereby causing his personal tax returns for 2015 and 2016 not to report this income to the IRS;

iii. In 2017, defendant diverted $1,624,192 in pharmacy income to his personal use for the purchase of a residence in Incline Village, Nevada. To do this, defendant used pharmacy revenue to buy three cashier's checks totaling $1,624,192 payable to a real estate title company in Nevada. To conceal this personal income from the IRS, defendant recorded the purchase of the cashier's checks on the pharmacies' books as payments to suppliers. Defendant also withheld information about these transactions from his tax return preparer so his 2017 income tax return failed to disclose the personal income.

iv. On June 2, 2017, defendant diverted $984,608.85 in pharmacy revenue to his personal use through a pharmacy manager's purchase of two cashier's checks payable to First American Title for closing on a residence in San Carlos, California. The pharmacies' books recorded the cashier's checks as inventory expenses, and defendant withheld information about these transactions from his tax return preparer so his 2017 income tax return would not disclose the personal income.

v.  In October and November 2017, defendant diverted $2,639,345.32 in pharmacy revenue to his personal use through the purchase of six cashier's checks payable to escrow companies and the Charles Schwab account of the Vincent James Peters Trust (which, in turn, wired the funds to escrow companies) for closing on a residence in Laguna Beach, California. The pharmacies' books recorded the cashier's checks as inventory expenses, and defendant withheld information

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 5
May 20, 2020

---

about these transactions from his tax return preparer so his 2017 income tax return would not disclose the personal income.

vi.   Beginning not later than mid-2014, defendant began transferring pharmacy revenues to bank accounts he held jointly with other family members. Among these transfers were: (1) from June 2014 through November 2015, the transfer of about $1,139,000 to an investment account defendant Peters jointly held with two family members; and (2) from October 2014 through January 2016, the transfer of about $753,000 to an investment account defendant Peters held jointly with a third family member. Even though defendant retained control of the funds and intended them for his personal use, he did not disclose the transfers to his income tax preparer and thereby caused his income tax returns for 2014 through 2016 to fail to disclose the income.

vii.  In total, defendant diverted from his pharmacies and concealed from the IRS, by intentionally filing false personal income tax returns for the tax years identified below and by intentionally committing the other affirmative acts to evade described above, the following amounts of personal income in the corresponding years with the intention of evading income tax on said amounts:

| Tax Year | Income Diverted and Concealed |
|----------|-------------------------------|
| 2014 | $52,800.34 |
| 2015 | $368,817.53 |
| 2016 | $4,061,795 |
| 2017 | $9,348,773 |

The parties stipulate that the offense level applicable to Count 1 is 12, pursuant to U.S.S.G. § 2B1.1(a)(2) (base offense level of six), (b)(1)(D) (six-level enhancement for intended loss exceeding $40k). The parties further stipulate that the offense level applicable to Count 2 is 26, pursuant to U.S.S.G. § 2T1.1(a)(1) (base offense level of 24 under § 2T4.1(J) for tax loss exceeding $3.5 million), (b)(2) (two-level enhancement for use of sophisticated means). The offenses are not grouped pursuant to U.S.S.G. § 3D1.2; the combined offense level for both counts is thus 26 pursuant to U.S.S.G. § 3D1.4(c) (disregarding offenses more with offense levels more than nine levels below the most serious count).

8.    **Acceptance of Responsibility**: The defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under USSG § 3E1.1 for defendant's unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 6
May 20, 2020

_____

9.      **Waiver of Discovery**: As a material term of this offer and agreement, defendant
expressly accepts the USAO's offer to make available the evidence gathered in the investigation
of this matter for on-site inspection  and the USAO's production of limited discovery as of the
date of this agreement in full satisfaction of the government's discovery obligations in this case.
Defendant knowingly, intelligently, and voluntarily waives his rights to further production of
evidence or information from the government, even though he may be entitled to such
production pursuant to the Federal Rules of Criminal Procedure, the discovery orders of the
court, and any prior demands for discovery.

10.     **Recommendation of 57 Months' Imprisonment**: In light of defendant's waiver of
indictment, substantive motions, and full discovery, defendant's acceptance of responsibility as
described in paragraph 8, *supra*, and defendant's compliance with all other terms of this
agreement, the USAO will not recommend any sentence of imprisonment longer than 57 months.

11.     **Additional Departures, Adjustments, or Variances**: The USAO agrees not to seek any
upward departures, adjustments, or variances to the advisory sentencing guideline range, or to
seek a sentence in excess of that range, except as specified in this agreement.  Defendant agrees
not to seek any downward departures or adjustments to the advisory sentencing guideline range
under the sentencing guidelines provisions.  The defendant may seek a downward variance
pursuant to the factors in 18 U.S.C. § 3553 and may request any sentence, including a
noncustodial sentence of probation.

12.     **Waiver of Appeal/Post-Conviction Relief**:  Defendant knowingly and voluntarily
waives the right to appeal from any aspect of the conviction and sentence on any grounds, except
for a claim that: (1) the sentence imposed exceeds the statutory maximum, (2) the Court arrives
at an advisory sentencing guideline range by applying an upward departure under the provisions
of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C.
§ 3553(a) to impose a sentence exceeding the advisory guideline sentencing range as determined
by the Court at the time of sentencing without required notice to the parties.  Should defendant
seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal.
Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C.
' 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds
of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C.
' 3582(c)(2).

        Defendant expressly agrees that this waiver shall remain effective in the event that the
USAO alters its sentencing recommendation consistent with paragraphs 8 and 10, *supra*, or
because defendant otherwise breaches this agreement.

13.     **Court Not Bound**: The Court is not bound by the recommendations of the parties or of
the presentence report (PSR) writer.  Because this agreement is made under Rule 11(c)(1)(B) of

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 7
May 20, 2020

the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

14.   **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

15.   **Restitution**: Defendant agrees to pay restitution to the Internal Revenue Service prior to sentencing, and stipulates to an order of restitution in the amount of $3,441,263 (which reflects the total amount of criminal tax loss, $5,496,900, less credit of $2,055,637 for tax payments defendant already remitted to the IRS with the filing of amended corporate tax returns for the relevant years). Defendant understands and agrees that the IRS may assess additional interest and penalties pursuant to Title 26.

The total amount of restitution, with the credit for tax payments made with amended returns, and which defendant will be ordered to pay, consists of the following:

| Tax Years | Tax |
|-----------|-----|
| 2014 | $0 |
| 2015 | $114,814 |
| 2016 | $1,597,009 |
| 2017 | $1,729,440 |

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.
Defendant agrees to send restitution payments to the IRS at the following address:

IRS - RACS
Attn: Mail Stop 6261, Restitution

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 8
May 20, 2020

———————————————

      333 W. Pershing Ave.
      Kansas City, MO 64108

With each payment to the IRS, Defendant will provide the following information:

    a.  Defendant's name and Social Security number;
    b.  The District Court and the docket number assigned to this case;
    c.  Tax year(s) or period(s) for which restitution has been ordered; and
    d.  A statement that the payment is being submitted pursuant to the District Court's
        restitution order.

      Defendant agrees to send to the Clerk of the District Court and to the U.S. Attorney's
Office Financial Litigation Unit notice of payments sent directly to the IRS, at the following
addresses:

      Office of the Clerk
      United States District Court
      740 United States Courthouse
      1000 Southwest Third Avenue
      Portland, OR  97204-2902

      U.S. Attorney's Office
      Financial Litigation Unit
      600 United States Courthouse
      1000 Southwest Third Avenue
      Portland, OR  97204-2902

      Defendant agrees fully to disclose all assets in which defendant has any interest or over
which defendant exercises control, directly or indirectly, including those held by a spouse,
nominee, or third party.  Defendant agrees to truthfully complete the Financial Disclosure
Statement provided herein by the earlier of fourteen days from defendant's signature on this plea
agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and
provide it to both the USAO and the United States Probation Office.  Defendant agrees to
provide updates with any material changes in circumstances, as described in 18 U.S.C.
§ 3664(k), within seven days of the event giving rise to the changed circumstances.

      Defendant expressly authorizes the USAO to obtain a credit report on defendant.
Defendant agrees to provide waivers, consents, or releases requested by the USAO to access
records to verify the financial information.  Defendant also authorizes the USAO to inspect and
copy all financial documents and information held by the U.S. Probation Office.

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 9
May 20, 2020

_____

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

**Transfer of Assets**
Defendant understands and agrees that, until a fine or restitution order is paid in full, he shall notify the Financial Litigation Unit of the USAO before transferring or causing the transfer of any funds or interest in property (other than through recurring debt payments and ordinary business operations) with a value exceeding $10,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

**Restitution**
Defendant understands and agrees that the total amount of any monetary judgment that the Court orders defendant to pay will be due and payable immediately. Defendant further understands and agrees that pursuant to 18 U.S.C. § 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the government may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the USAO of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to 18 U.S.C. § 3664(k), defendant shall notify the Court and the USAO immediately of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

16.  **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea or rescind his waiver of appeal and post-conviction relief, as described in paragraph 12, *supra*.

If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and shall be precluded thereby from raising a breach claim for the first time on appeal.

Whitney P. Boise & Josh B. Ewing, Esqs.
Page 10
May 20, 2020

_____

17.    **Memorialization of Agreement**:  No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court.  If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

18.    **Deadline**:  This plea offer expires if not accepted by 5:00 p.m. May 20, 2020.

Sincerely,

BILLY J. WILLIAMS
United States Attorney

*Ryan Wesley Bounds*
RYAN W. BOUNDS
SETH D. URAM
Assistant United States Attorneys

I have carefully reviewed every part of this agreement with my attorney.  I understand and voluntarily agree to its terms.  I expressly waive my rights to appeal as outlined in this agreement.  I wish to plead guilty because, in fact, I am guilty.

7/6/2020
_____              _____
Date                                       Matthew H. Peters, Defendant

    I represent the defendant as legal counsel.  I have carefully reviewed every part of this agreement with defendant.  To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

7/6/2020
_____              _____
Date                                       Whitney P. Boise, Esq.
                                           Josh B. Ewing, Esq.
                                           Attorneys for Defendant