1   PHILLIP A. TALBERT
    United States Attorney
2   DAVID E. THIESS
    STEVEN S. TENNYSON
3   Assistant United States Attorneys
    501 I Street, Suite 10-100
4   Sacramento, CA 95814
    Telephone: (916) 554-2700
5   Facsimile: (916) 554-2900
    David.Thiess@usdoj.gov
6   Steven.Tennyson2@usdoj.gov

7   Attorneys for the United States of America

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,              Case No. 2:24-cv-00287-WBS-CKD

13                     Plaintiff,          **UNITED STATES' OPPOSITION TO
                                           DEFENDANT ONE WAY DRUG LLC
14  v.                                     D/B/A PARTELL PHARMACY'S
                                           MOTION TO DISMISS (DKT. NO. 33)**
15  MATTHEW H. PETERS, *et al.*,

16                     Defendants.         DATE :      July 8, 2024
                                           TIME  :     1:30 pm
17                                         CTRM :      5, 14th Floor
                                           JUDGE:      Honorable William B. Shubb
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   PLEADING STANDARDS GOVERNING THE MOTION ........................................ 2

III.  ARGUMENT ..................................................................................................... 3

   A.  The United States' Complaint Sufficiently Describes the
       Role of One Way Drug ................................................................................. 3

       1.  The Complaint's Allegations Regarding the Defendant
           Pharmacies are Sufficient as to One Way Drug ..................................... 3

       2.  The Complaint Provides Sufficient Indicia that Actual
           False Claims Were Submitted by One Way Drug ................................... 6

   B.  The Complaint Sufficiently Pleads that False Claims "Resulted From"
       the Two Kickback Schemes .......................................................................... 7

   C.  The United States' Complaint is Not Time-Barred ...................................... 11

       1.  The FCA Action Is Timely on Its Face .................................................. 11

       2.  Defendant Peters's Plea Agreement Involves Separate Crimes and
           Has No Effect on the Timeliness of the Complaint ............................... 12

       3.  The United States' Payment by Mistake Claim Is Not Time-Barred
           Under the Appropriate Federal Standard ............................................. 13

   D.  The Reverse FCA Claims Are Not Redundant ........................................... 14

IV.   CONCLUSION .................................................................................................. 16

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Agility Public Warehousing Co. K.S.C.P. v. United States*,
    969 F.3d 1355 (Fed. Cir. 2020) .......................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 2

*Cataldo v. U.S. Steel Corp.*,
    676 F.3d 542 (6th Cir. 2012) ............................................................................................ 11

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...................................................................................... 2, 6, 7

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .............................................................................................. 5

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) .............................................................................................. 6

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ............................................................................................ 6

*Guilfoile v. Shields*,
    913 F.3d 178 (1st Cir. 2019) ............................................................................................ 10

*Hernandez v. City of El Monte*,
    138 F.3d 393 (9th Cir. 1998) .............................................................................. 11, 12, 13

*Kuzma v. N. Arizona Healthcare Corp.*,
    607 F. Supp. 3d 942 (D. Ariz. 2022) ............................................................................... 11

*Olympic Coast Inv. v. Seipel*,
    208 F. App'x 569 (9th Cir. 2006) ..................................................................................... 15

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
    733 F.3d 1251 (9th Cir. 2013) .......................................................................................... 11

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995) ............................................................................................ 11

ii

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

*United States v. Bourseau*,
    531 F.3d 1159 (9th Cir. 2008) ............................................................................... 15

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) ................................................................................. 12

*United States ex rel. Bawduniak v. Biogen Idec., Inc.*,
    No. 12-CV-10601-IT, 2018 WL 1996829 (D.Mass. Apr. 27, 2018) ......................... 9

*United States ex rel. Brown v. Celgene Corp.*,
    No. CV 10-3165-GHK (SSx), 2014 WL 3605896 (C.D. Cal. July 10, 2014) ................... 10

*U.S. ex rel. Cericola v. Fed. Nat. Mortg. Assoc.*,
    529 F. Supp. 2d 1139 (C.D. Cal. 2007) ................................................................. 12

*United States ex rel. Condie v. Bd. of Regents of Univ. of California*,
    C89-3550-FMS, 1993 WL 740185 (N.D. Cal. Sept. 7, 1993) ............................... 14

*United States ex rel. Everest Principals, LLC v. Abbott Laboratories, Inc.*,
    622 F. Supp. 3d 920 (S.D. Cal. Aug. 18, 2022) .............................................. 8, 11

*United States ex rel. Gagne v. City of Worcester*,
    565 F.3d 40 (1st Cir. 2009) ..................................................................................... 2

*United States ex rel. Greenfield v. Medco Health Solutions, Inc.*,
    880 F.3d 89 (3d Cir. 2018) .................................................................................... 10

*United States ex rel. Kane v. Healthfirst, Inc.*,
    120 F. Supp. 3d 370 (S.D.N.Y. 2015) ................................................................... 15

*United States ex rel. Kester v. Novartis Pharm. Corp.*,
    41 F. Supp. 3d 323 (S.D.N.Y. 2014) .................................................................... 10

*United States ex rel. Lee v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ........................................................................ 2, 3, 5

*United States ex rel. Radhakrishnan v. Gampel*,
    No. CV-20-00176-PHX-GMS, 2024 WL 894671 (D. Ariz. Mar. 1, 2024) ............ 10, 11

*United States ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ........................................................................ 3, 4, 5

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .................................................................... 2, 3, 4, 6

*United States ex rel. Thomas v. Bailey*,
    2008 WL 4853630 (E.D. Ark. Nov. 6, 2008) ........................................................ 10

iii

*United States ex rel. Turner v. Dynamic Medical Systems, LLC*,
   No. 1:17-cv-01757-NONE-SAB, 2022 WL 20804350 (E.D. Cal. Jan. 24, 2022) ................................. 9

*United States v. Carell*,
   681 F. Supp.2d 874 (M.D. Tenn. 2009) ...................................... 14

*United States v. Mallory*,
   988 F.3d 730 (4th Cir. 2021) ...................................... 8

*United States v. Stella Perez*,
   956 F. Supp 1046 (D.P.R. 1997) ...................................... 14

*United States v. Summerlin*,
   310 U.S. 414 (1940) ...................................... 14

*United States v. Wurts*,
   303 U.S. 414 (1938) ...................................... 14

**<u>Statutes</u>**

28 U.S.C. § 2415(a) ...................................... 14

31 U.S.C. § 3129(a)(1)(G) ...................................... 14

31 U.S.C. § 3731(b) ...................................... 12

31 U.S.C. § 3731(b)(1) ...................................... 11

31 U.S.C. § 3731(b)(2) ...................................... 12

42 U.S.C. § 1320a-7b(g) ...................................... 9

**<u>Rules</u>**

Fed. R. Civ. P. 8(d)(2) ...................................... 15

Fed. R. Civ. P. 9(b) ...................................... 2

Fed. R. Civ. P. 15(c)(1)(B) ...................................... 12

**<u>Other Authorities</u>**

155 Cong. Rec. S10 ...................................... 10

*Federal Practice and Procedure* § 1298
   (3d ed. 2016) ...................................... 2

iv

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

1

## I.    **INTRODUCTION**

2

The United States' First Amended Complaint ("Complaint") alleges that Defendant Matthew

3

Peters, through a web of entities he controlled, bribed physicians and promotional agents to generate

4

prescriptions to the mail-order Defendant Pharmacies[1] he controlled—including Defendant One Way

5

Drug d/b/a Partell Pharmacy ("One Way Drug")—with the purpose of billing federal health care

6

programs and other payors in excessive amounts. These frauds violated the federal Anti-Kickback

7

Statute ("AKS") and False Claims Act ("FCA").

8

One Way Drug now seeks to be excused from frauds in which it played a key part. It dispensed

9

medications from prescriptions that were improperly induced, for which it claimed payment in violation

10

of the FCA, that helped Peters to profit. The Complaint provides copious details regarding the two

11

kickback schemes, sufficient to put the defendants on notice of the issues subject to defense and to

12

substantiate the schemes that took place. One Way Drug trifles that the Complaint does not provide a list

13

of allegations to set it apart from the other Defendant Pharmacies Peters controlled that played the same

14

role in the frauds. The Complaint does exactly what Ninth Circuit precedent requires in this situation,

15

however. It describes One Way Drug's role as one of the mail-order compounding pharmacies that

16

Peters used to execute and conceal the schemes. The fact that Peters also controlled other Defendant

17

Pharmacies as part of the same pattern does not defeat the claims against One Way Drug.

18

One Way Drug's push for this Court adopt a new, heightened standard for the causation of false

19

claims tainted by kickbacks, which the Ninth Circuit and its District Courts have never adopted, but that

20

the allegations in the Complaint would easily satisfy in any event, also fails. The same is true for the

21

arguments that One Way Drug adopts from the Motion to Dismiss submitted by Peters,[2] including the

22

nonserious argument that Peters's plea to separate federal crimes has any bearing on the timeliness of

23

the Complaint.

24

25

[1] For convenience, this Opposition uses the same references for the parties and other relevant individuals as used in the Complaint and in Dkt. No. 41, United States' Opposition to Defendants'

26

Motion to Dismiss. These references include the Defendant Pharmacies, the Defendant MSOs, Marketing Entity Defendants, and Sales Representatives.

27

[2] *See* Dkt. No. 21, Defendants' Notice of Motion and Motion to Dismiss, and Dkt. No. 41,

28

United States' Opposition to Defendants' Motion to Dismiss.

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

## II.   PLEADING STANDARDS GOVERNING THE MOTION

Dismissal of a complaint for failure to state a claim under Rule 12(b)(6) is unwarranted where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). In considering a motion to dismiss for failure to state a claim, the Court must accept as true a plaintiff's factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Twombly,* 550 U.S. at 555-56; *accord Iqbal*, 556 U.S. at 678.

The pleading standards of Rule 9(b), which apply to claims brought under the False Claims Act, require a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). All "other facts may be plead generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011). "Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotation marks omitted). Rule 9(b) "does not require absolute particularity or a recital of the evidence." *Id.* at 1180 (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (3d ed. 2016)). Thus, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction,' or identify the 'precise method' used to carry out the fraud." *United Healthcare*, 848 F.3d at 1180 (quoting *Cooper v. Pickett*,137 F.3d 616, 627 (9th Cir. 1997)). The questions of "who, what, when, where, and how" are to be examined "in the context of the complaint as a whole." *United Healthcare*, 848 F.3d at 1181; *see also United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (finding that Rule 9b is satisfied "when some questions remain unanswered, provided the complaint as a whole is sufficiently particular to pass muster").

At its core, the most basic consideration of Rule 9(b) is to "give adequate notice to an adverse party and enable that party to prepare a responsive pleading" such that the party can "defend against the charge and not just deny that they have done anything wrong.'" *United Healthcare*, 848 F.3d at 1180

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

(*citations omitted*). Further, "[b]y requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges." *Id.*

### III.  ARGUMENT

#### A.   The United States' Complaint Sufficiently Describes the Role of One Way Drug.

One Way Drug wrongly declares in its Motion to Dismiss that the Complaint "simply lumps One Way in with all of the other Defendant Pharmacies," which it asserts is "not permissible as a matter of law." (Dkt. No. 33 ("OWD Br.") at 5.). That assertion is not tied to the correct pleading standard and overlooks the Complaint's clear-cut allegations that the Defendant Pharmacies were each controlled and treated as substitutes for each other by Defendant Peters.

##### 1.   The Complaint's Allegations Regarding the Defendant Pharmacies are Sufficient as to One Way Drug.

In the Ninth Circuit, a complaint naming multiple defendants is tasked with "'identify[ing] the _role_ of each defendant in the scheme.'" *United Healthcare,* 848 F.3d at 1184 (citing *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98) (emphasis added). To that end, it is well-established that "a complaint need not distinguish between defendants that had the exact same role in a fraud." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018); *accord United Healthcare,* 848 F.3d at 1184 (finding that, for similarly situated defendants, "[t]here is no flaw in a pleading … where collective allegations are used to describe the actions of multiple defendants").

Consistent with the applicable pleading standard, the Complaint sufficiently describes the participation of One Way Drug in the fraud schemes. As explained throughout the Complaint, under Peters's direction, the Defendant Pharmacies dispensed medications based on the prescriptions that were induced through the two kickback schemes and were paid by federal health care programs and other payors for the associated claims. The Complaint then ties the Defendant Pharmacies to the alleged conduct in several other ways. For example, the funds received from those claims were used to pay the Sales Representatives for generating the associated prescriptions—a specific example of which is identified with respect to One Way Drug (Complaint ("Compl.") ¶ 227), by moving funds circuitously from the Defendant Pharmacies through the Marketing Entity Defendants. (*Id.* ¶¶ 226, 229). And under the MSO investment scheme, Peters used each physician's collective prescription volume across the

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

Defendant Pharmacies to determine whether a physician could be offered the chance to invest (or invest more). (Compl. ¶ 166). Each of these allegations regarding the Defendant Pharmacies includes One Way Drug.

Controlling Ninth Circuit precedent regarding collective pleading, which One Way Drug ignores, does not require the Complaint to create distinctions between the Defendant Pharmacies when Peters operated them in a completely fungible manner. *See United Healthcare,* 848 F.3d at 1184. As set up by Peters, prescribing physicians indiscriminately sent in prescriptions using prescription pads and a centralized fax number that did not permit physicians to select a pharmacy (*id.* ¶¶ 93, 201 to 203), and as part of the effort to disguise and diffuse the fraud (*id.* at ¶¶ 22, 258, 265 to 266). Peters routed prescriptions to the Defendant Pharmacy that he thought would help him best advance his scheme. (*Id.* ¶ 199). Peters did not otherwise distinguish between the Defendant Pharmacies in the operation of the kickback schemes. (*Id.* at ¶ 200). In this situation, as the Ninth Circuit held in *WellPoint*, "there was no reason (and no way) for [the plaintiff] to differentiate among those allegations that are common to the group." 904 F.3d at 678.  Indeed, "[a] good claim against one defendant did not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts." *Id.* at 677.

The Ninth Circuit's analysis in *WellPoint* is instructive as to One Way Drug. In *WellPoint*, a medical assessment company, MedXM, contracted with a collection of private insurers that participated in the Medicare Advantage program. *Id.* at 674-675. The assessments performed by MedXM affected the payment that the Medicare Advantage plans were able to claim from the federal Government. The relator in that case alleged that MedXM was artificially modifying and fabricating patient diagnoses to make the patients appear to be in worse health, which improperly increased the Medicare Advantage insurers received increased payments from the Government. *Id.* at 672-73. When those insurers argued that the complaint's allegations were "undifferentiated" between the insurers and moved to dismiss, *id.* at 676, the Ninth Circuit rejected the argument and found the collective allegations sufficient, comparing the allegations to a "wheel conspiracy." *Id.* at 678. In contrast to a "chain conspiracy," in which each person or party is responsible for a distinct part of the plan, a "wheel conspiracy involves a single member or group (the hub) separately agreeing with two or more other members or groups (the spokes)." *Id.* (citation and internal citation marks omitted). The Ninth Circuit found that "if a fraudulent

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

scheme involves a wheel conspiracy, then any parallel actions of the 'spokes' can be addressed by collective allegations." *Id.*  In this case, Peters is the "hub" and the Defendant Pharmacies are "spokes." The Ninth Circuit's holding in *WellPoint* authorizes the collective allegations here.[3]

One Way Drug cites *United States v. Corinthian Colleges* in support of its "lumping" argument, but *Corinthian Colleges* helps show how the Complaint's collective allegations are proper. In *Corinthian Colleges*, relators alleged a university and seven individuals serving on the university's Board of Directors violated certain rules regarding incentive pay for recruiters based on the students they enroll. 655 F.3d 984 (9th Cir. 2011). The only factual supporting detail of any kind regarding the individual defendants, either separately or in the collective, was that they "monitored and approved of the illegal recruiter compensation packages as a means to obtain targeted enrollment levels[.]" *Id.* at 998. The Ninth Circuit found that the allegation "simply attributes wholesale all of the allegations against Corinthian to the individual defendants." *Id.* That holding is fully consistent with *WellPoint*, which identifies the situation in which "lumping" becomes a concern. Specifically, "it is not enough to 'lump' together dissimilar defendants and assert that 'everyone did everything.'" *WellPoint,* 904 F.3d at 677 (citing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)). The Complaint in this case does not allege that everyone did everything. Rather, it describes the role of One Way Drug as a Defendant Pharmacy in the frauds. Here, One Way Drug has more than adequate notice regarding the issues and allegations that pertain to it.

One Way Drug's lament that the Complaint has not made "allegations of any specific kickback payments made by One Way" or "that One Way conspired with the sales representative or other pharmacies in some way" is immaterial. (OWD Br. at 5-6). Although the Complaint describes how claims payments funded the kickbacks, it need not allege that One Way made direct arrangements with physicians or Sales Representatives. That was not its role in the fraud. The fact that the Complaint distinguishes the Defendant Pharmacies from the other parties in the Complaint shows that the United States has properly specified the role of One Way Drug.

---

[3] It is notable that the hub (MedXM) in *WellPoint* did not control and was not a corporate affiliate of the Medicare Advantage plans. MedXM did not directly profit as they were paid more by the Government. The plans—competitors in the market—were not alleged to be substitutes for each other, as is alleged here. Collective pleading is therefore even more sensible here.

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

2. **The Complaint Provides Sufficient Indicia that Actual False Claims Were Submitted by One Way Drug.**

One Way Drug again ignores both the relevant pleading standard and the detailed allegations in the Complaint when it asserts there are "no allegations of specific billings submitted by One Way to … federal programs, and certainly no allegations of any specific false claims presented by One Way[.]" (OWD Br. at 6). The Ninth Circuit has made clear that FCA complaints need not itemize the many false claims submitted or caused to be submitted by a provider in an FCA action, nor provide examples of those claims. Further, as controlling Ninth Circuit precedent allows collective pleading with respect to defendants with the same role in the conduct, it unequivocally follows that the Complaint need not fully itemize the claims submitted to federal health care programs by each of the Defendant Pharmacies.

In the Ninth Circuit, "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *United Healthcare*, 848 F.3d at 1180 (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). FCA complaints need not even identify example false claims (although example claims are one way to provide underlying detail), let alone identify distinctive information regarding the entire set of false claims. *United Healthcare*, 848 F.3d at 1183 (quoting *Ebeid*, 616 F.3d at 998); *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019). The Complaint more than adequately meets that pleading standard through voluminous details regarding the schemes to induce prescriptions, as well as specific dollar values paid by Medicare Part D plans for prescriptions resulting from each kickback scheme—both in the aggregate for a period of multiple years for each kickback scheme (Compl. ¶¶ 206, 235) and in the context of several examples specific to each scheme (*see, e.g.*, *id.* ¶¶ 156, 157, 207, 227), among other claims-related details.

The Ninth Circuit's controlling decisions that an FCA complaint need not identify false claims draw on longstanding Ninth Circuit precedent that fraud allegations need not detail specific fraudulent transactions. For example, in *Cooper v. Pickett,* shareholders of a technology company alleged that the company fraudulently recognized revenues by deliberately shipping excessive amounts of products to customers, including eight example customers. 137 F.3d 616 (9th Cir. 1997). Noting some allegations in the complaint regarding aggregate dollar amounts of overstated revenues, net income and earnings in

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

two quarters, the Ninth Circuit held that the complaint need not "describe in detail a single specific transaction .. by customer, amount, and precise [revenue recognition] method." *Id.* at 626-27. The Ninth Circuit reasoned that it "cannot make Rule 9(b) carry more weight than it was meant to bear" and "we do not test the evidence at this stage," leaving the details regarding specific transactions to be established at a later phase in the litigation. *Id.* at 627.

Although it does not need to do so, the Complaint provided an example false claim submitted by One Way Drug, from which One Way Drug attempts a futile distinction. The Complaint provides the example claim, submitted in 2019, as example of Medicare Part D reimbursement for prescriptions being incorporated into Sales Representative commissions. (Compl. ¶¶ 206, 227). The Complaint identifies very specific information regarding that claim, including the three medications that were compounded as reported with the claim, the quantity of each medication that was included in the product claimed, and the prescribing physician. One Way Drug takes issue that the example identifies that "one Way Drug dispensed several medications—not that One Way submitted one or more false claims seeking remuneration for those medications, not that One Way received or paid out some or all of the purported Medicare Part D reimbursements[.]" (OWD Br. at 5). Emblematic of the weakness of One Way Drug's argument, this contortion ignores that a portion of the Medicare Part D reimbursement was included in the relevant Sales Representative's pay, which is to say that a claim was submitted to and paid by the Medicare Part D plan. (Compl. ¶ 227).

### B.     The Complaint Sufficiently Pleads that False Claims "Resulted From" the Two Kickback Schemes.

One Way Drug avers that the Complaint does not plead a "link" between kickbacks and false claims, but again ignores the allegations in the Complaint and this argument rings completely empty. The Complaint is flush with the express ties between the kickbacks and the resulting prescriptions that the Defendant Pharmacies would then claim for payment. With respect to the MSO investment scheme, the Complaint details how Peters selected physicians to be offered investment shares in the MSOs (or to be offered more shares) directly based on the number and cost of the prescriptions each physician had directed to the Defendant Pharmacies (Compl. ¶¶  164 to 184, 214); how MSO investors were pressured to prescribe as a condition of investment (Compl. ¶¶ 185 to 194); and how investors' prescription

7

volume increased as they received even higher payouts (Compl. ¶¶ 156, 157). It provides example after example of specific discussions where the relevant parties directly point to the link between MSO investment and each investor's prescriptions. And it provides not only examples of the explosive growth in prescriptions to the Defendant Pharmacies by physicians receiving payouts from the Defendant MSOs, but also how those kickbacks influenced MSO investors to prescribe at levels they had not done before, when measured across all pharmacies to which they prescribed. (Compl. ¶ 158). These extensive details far exceed the pleading standard for the connection between kickbacks and claims. *See United States ex rel. Everest Principals, LLC v. Abbott Laboratories, Inc*., 622 F. Supp. 3d 920, 933 (S.D. Cal. Aug. 18, 2022) (finding that the relator "sufficiently established a link between the kickback and the claim for reimbursement" simply by pleading that the defendant gave remuneration "for the purpose of inducing" usage of a medical device).[4]

The link between the Sales Representative commissions and claims is equally obvious. By its very nature, those commissions were a success fee for the Sales Representative having generated a prescription to the Defendant Pharmacy, for which the Defendant Pharmacy was able to bill. Sales Representative commissions were calculated based on a percentage of payment received from federal health care programs and other insurance payors for prescriptions generated by the Sales Representative. (*See* Compl. ¶¶ 224 to 226). Indeed, that link between commissions and claims strikes at the heart of the United States Government's concern regarding commissions paid to loosely-affiliated sales representatives. (*See* Compl. ¶¶ 79 to 82). Paying incentives of that sort to promotional agents naturally encourages the agents to push extraneous and costly medical products (which was the express design here, *id*. ¶ 236), without proper checks in place on the promotional conduct. (*Id*. ¶¶ 79 to 82); *see United States v. Mallory,* 988 F.3d 730, 738 (4th Cir. 2021) (describing how commissions payments to independent contractors violate the AKS and citing United States Health and Human Services guidance

---

[4] Mixed in with its hollow assertions that the Complaint has not described the link between kickbacks and false claims, One Way Drug repeats its inapposite argument that the United States has not "identified" the claims submitted by One Way Drug. As addressed above in Section III.B, the United States need not do so because it has provided reliable indicia that actual claims were submitted and described One Way Drug's role in the fraud. The direct links between kickbacks and claims that are established in the Complaint apply to the claims submitted by One Way Drug in the same manner as to the other Defendant Pharmacies.

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

that refused to protect such commissions under a safe harbor due to "many examples of abusive practices by sales personnel who are paid as independent contractors") (citation omitted). One Way Drug has no coherent argument that, based on the facts alleged here, the link between kickbacks and false claims is anything other than crystal clear.

One Way Drug then asks this Court to create new requirements in FCA cases involving AKS violations, which no court in this Circuit has imposed. It suggests this Court should read a "but-for" standard of causation into the statutory clarification that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim," 42 U.S.C. § 1320a-7b(g). As One Way Drug acknowledges, the Ninth Circuit has not done so. (OWD Br. at 8). One Way Drug asserts that kickback-tainted claims should only be false when they involve prescriptions that would not have been issued but for the kickbacks paid, and vaguely suggests that the United States has not pled details speaking to that degree of causation. (OWD Br. at 8). This attempt falls flat for several reasons.

First, this Court has already expressly rejected the idea of "but-for" causation as a requirement in FCA cases premised on AKS violations. In holding that a relator had sufficiently alleged a kickback scheme, including a sufficient nexus between remuneration and referral, this Court favorably cited precedent that "[i]t is sufficient to show that Defendant paid kickbacks to a physician for the purpose of inducing the physician to prescribe specific drugs, *even if* the physician would have prescribed those drugs absent the kickback." *United States ex rel. Turner v. Dynamic Medical Systems, LLC*, No. 1:17-cv-01757-NONE-SAB, 2022 WL 20804350, at *23 (E.D. Cal. Jan. 24, 2022) (Drozd, J.) (citing *United States ex rel. Bawduniak v. Biogen Idec., Inc.*, No. 12-CV-10601-IT, 2018 WL 1996829, at *3 (D.Mass. Apr. 27, 2018)) (emphasis in original). In *Turner*, a case involving significantly less-detailed allegations than are set forth in the Complaint here, this Court rejected an argument very similar to that now offered by One Way Drug, "that relator has failed to plead a link between an AKS violation and an actual claim[,]" which this Court found "unpersuasive." *Turner,* 2022 WL 20804350, at *23 (internal quotation marks omitted).

Second, One Way Drug's plea for this Court to adopt the but-for standard is directly opposite to the intended purpose of Section 1320a-7b(g). The clarification that all claims "resulting from" a

9

kickback are false was designed to strengthen enforcement of the AKS through FCA actions, not to introduce new barriers to enforcement. *See United States ex rel. Greenfield v. Medco Health Solutions, Inc.*¸ 880 F.3d 89, 96 (3d Cir. 2018)*; Guilfoile v. Shields,* 913 F.3d 178, 190-191 (1st Cir. 2019); *Bawduniak*, at *5. Prior to the passage of Section 1320a-7b(g) in 2010, it was already long-established that "non-compliance with the AKS rendered a claim non-payable and that a FCA claim could therefore be premised on an AKS violation." *United States ex rel. Brown v. Celgene Corp*., No. CV 10-3165-GHK (SSx), 2014 WL 3605896, at *7 (C.D. Cal. July 10, 2014) (collecting cases). This longstanding rule reflects the governing principle that "[t]he Government does not get what it bargained for when a defendant is paid … for services tainted by a kickback." *Greenfield*, 880 F.3d at 97 (citation and internal quotation marks omitted). If a kickback is given to induce the ordering of items or services, and those intended results materialize, then a claim seeking reimbursement for them is false. *See Id.* at 98.

Section 1320a-7b(g) was intended to codify this existing *per se* rule of falsity. *Id.* As background, a then-recent isolated decision, *United States ex rel. Thomas v. Bailey*, 2008 WL 4853630 (E.D. Ark. Nov. 6, 2008), had found that a device manufacturer's kickbacks paid to surgeons to encourage those surgeons to use of its products did not necessarily make a hospital's claims for those surgeries false, if the hospital had not violated the AKS or been aware of the violation. Congress enacted Section 1320a-7b(g) at least in part to abrogate that specific decision, as it cemented the notion that an AKS violation renders false any claim for the items or services the kickback was intended to induce, regardless of who submits the claim. 155 Cong. Rec. S10,853; *see United States ex rel. Kester v. Novartis Pharm. Corp*., 41 F. Supp. 3d 323, 333-335 (S.D.N.Y. 2014) (analyzing legislative history of Section 1320a-7b(g)). One Way Drug now argues for dismissal on the theory that it was merely a beneficiary of the fraud "perpetrated by a single individual" (OWD Br. at 8), who the United States alleges controlled One Way Drug and the other Defendant Pharmacies. Thus, One Way Drug now attempts to revive a weaker version of the argument that Congress specifically meant to repudiate when it enacted Section 1320a-7b(g).

Finally, other courts in this Circuit have evaluated causation as the Third Circuit did in *Greenfield* and not as One Way Drug now requests. *United States ex rel. Radhakrishnan v. Gampel*, No. CV-20-00176-PHX-GMS, 2024 WL 894671, at *4 (D. Ariz. Mar. 1, 2024) (noting that the *Greenfield*

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

1  "standard for causation has been used in the courts of this Circuit in the past"); *United States ex rel.*

2  *Kuzma v. N. Arizona Healthcare Corp.*, 607 F. Supp. 3d 942, 956 (D. Ariz. 2022) ("[W]here the doctor

3  who actually received the alleged kickback then uses the defendant's services, courts have found a

4  sufficient causal link."). But courts of this Circuit have also consistently held that, regardless of which

5  standard of causation applies, pleading basic details regarding the design of kickbacks to induce the

6  usage of medical items and services is sufficient at this stage. *See Everest Principals,* 622 F.Supp.3d at

7  933; *Gampel,* 2024 WL 894671, at *3 ("[T]he investing physicians were getting paid for successful

8  referrals. That is all that is necessary here in alleging causation regardless of which standard for

9  causation applies in this circuit."). The details alleged in the Complaint certainly satisfy that standard.

10      **C.  <u>The United States' Complaint Is Not Time-Barred.</u>**

11      One Way Drug repeats some of the same time limitation arguments that were offered by Peters

12  and other defendants (Dkt. No. 21, "the Peters Motion"), which quickly fail for the same reasons that the

13  Peters Motion did. The United States unquestionably alleges conduct occurring within the FCA's statute

14  of limitations. One Way Drug's meandering arguments regarding statute of limitations should be

15  rejected.

16      A complaint should not be dismissed due to the statute of limitations unless it is clear from the

17  allegations in the complaint that the claim is time-barred. *See Hernandez v. City of El Monte*, 138 F.3d

18  393, 402 (9th Cir. 1998) ("A complaint cannot be dismissed unless it appears beyond doubt that the

19  plaintiff can prove no set of facts that would establish the timeliness of the claim." (quoting *Supermail*

20  *Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)); *see also Cataldo v. U.S. Steel Corp.*,

21  676 F.3d 542, 547 (6th Cir. 2012) (finding that dismissal under Rule 12(b)(6) is appropriate only where

22  the allegations on their face "affirmatively show that the claim is time-barred"). In a motion to dismiss, a

23  defendant must show "it is apparent from the face of the complaint the claim is untimely." *Seven Arts*

24  *Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

25      **1.  The FCA Action Is Timely on Its Face.**

26      The FCA's statute of limitations provision allows actions to be filed within two alternative

27  limitations periods. The first allows FCA actions within six years of the false claims at issue. 31 U.S.C.

28  § 3731(b)(1). A violation occurs at any time that a false claim is submitted to the Government. *See*

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.,* 314 F.3d 995, 1002 (9th Cir. 2002). The second limitations prong allows actions within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances," and in that case, the action can be brought up to 10 years following the false claims at issue. 31 U.S.C. § 3731(b)(2). FCA plaintiffs can bring actions within whichever of these two periods is later. 31 U.S.C. § 3731(b).

This civil action was brought on January 22, 2024, when the United States filed its original complaint.[5] (Dkt. No. 1). All claims for FCA violations committed on or after January 22, 2018, are definitively timely. On the face of the Complaint, the United States alleges fraudulent conduct that resulted in false claims submitted to federal health care programs in the years 2018, 2019, and 2020 (which are less than six years preceding the Complaint). (*See* Compl. ¶¶ 121-127, 132-134, 145-147, 149-152, 160, 172, 174-175, 177, 188, 214 (regarding the MSO scheme); *id.* ¶¶ 218, 227, 231, 233, 235 (regarding commission scheme)). The Complaint alleges that the Defendant Pharmacies received revenue from Medicare Part D plans for claims submitted throughout 2018, 2019 and 2020 that were rendered false by these practices. (*Id.* ¶¶ 122, 156-158, 206-207, 235). One Way Drug ignores all of these specific allegations when it argues the Complaint does not allege dates that are relevant to an FCA action. (OWD. Br. at 7). The Complaint cannot be dismissed because it does not "appear beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Hernandez,* 138 F.3d at 402. To the contrary, the Complaint's allegations fall squarely within the FCA's 6-year statute of limitations prong.

### 2. Defendant Peters's Plea Agreement Involves Separate Crimes and Has No Effect on the Timeliness of the Complaint.

Peters's 2020 criminal plea to an earlier health care fraud scheme does not bear on this matter. The plea agreement between Peters and the U.S. Attorney's Office for the District of Oregon ("the Plea

---

[5] The First Amended Complaint relates back to the Complaint because the claims brought in it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also U.S. ex rel. Cericola v. Fed. Nat. Mortg. Assoc.*, 529 F. Supp. 2d 1139, 1148 (C.D. Cal. 2007) (applying Rule 15 relation back in FCA case).

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

Agreement") lays out another fraud scheme, not appearing in the Complaint. (See Peters Motion, Exhibit A). The Plea Agreement states that in 2014 and 2015, Peters knowingly executed a scheme to defraud CVS Caremark by means of false or fraudulent representations. (*Id.* at 2-3). As Peters admitted in the Plea Agreement, a CVS Caremark claims audit uncovered discrepancies potentially requiring two pharmacies owned and operated by Peters to repay claims because the pharmacies did not have documentation that patients actually received medications, and Peters falsified replacement records in an attempt to cover up the discrepancies. (*Id.* at 3). Peters submitted to CVS Caremark 41 forged attestations—purportedly from the beneficiaries confirming receipt of their medications—in order to avoid rescission of the disputed reimbursements and suspension from CVS Caremark's network. (*Id.*).

One Way Drug's bare assertion that "many of the same facts underly[] the civil Complaint in this matter" is plainly inaccurate, just like Defendant Peters's submission to the same effect. (OWD Br. at 6; *compare* Peters Motion at 8). As a threshold matter, One Way Drug is not mentioned in the Plea Agreement. Only two of the fifteen Defendant Pharmacies named in the Complaint are mentioned in the Plea Agreement, and neither is One Way Drug. The Plea Agreement does not pertain to One Way Drug. More broadly, though, the conduct described in the Plea Agreement is not alleged in the Complaint. Nowhere does the Plea Agreement mention kickbacks, either of the Defendant MSOs (Coastline Specialty Services or Bayview Specialty Services), physician investment, Sales Representative commissions, or any of the Marketing Entity Defendants. The criminal conduct described in the Plea Agreement is separate, and nothing about that plea can make the FCA claims alleged in the Complaint untimely.[6]

### 3. The United States' Payment by Mistake Claim Is Not Time-Barred Under the Appropriate Federal Standard.

One Way Drug briefly challenges the United States' Payment by Mistake claim on Rule 9(b) grounds, reasserting its Rule 9(b) arguments as to this count. But the Complaint's extraordinarily detailed allegations satisfy Rule 9(b) as to the United States' Payment by Mistake claim just as they

---

[6] Of course, the mere fact of a prior guilty plea would not in and of itself render any later civil complaint untimely if the same conduct continued into more recent years. However, this case is much simpler than that because the conduct to which Peters pleaded guilty is different from that alleged here.

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

satisfy Rule 9(b) as to the United States' FCA claims.

Then, in a portion of a sentence, One Way Drug repeats the same erroneous argument regarding state law limitations as made in the Peters Motion. (OWD Br. at 10). The United States' Payment by Mistake claim arises under federal law, and the "United States is not bound by state statutes of limitations." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see also United States v. Wurts*, 303 U.S. 414, 415-16 (1938) ("The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid," which is not barred unless "Congress has clearly manifested its intention' to raise a statutory barrier.") (internal citation and quotation marks omitted). *See also Agility Public Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1365 (Fed. Cir. 2020) ("When a payment is erroneously or illegally made, … the United States may exercise its well-established right to sue for money wrongfully or erroneously paid from the public treasury, a right arising separate and apart from statute, regulation, or contract.") (internal quotation marks omitted).

Federal law dictates the statute of limitations.  Consequently, federal courts apply the six-year statute of limitations in 28 U.S.C. § 2415(a) to the United States' payment by mistake claims. *United States v. Stella Perez*, 956 F. Supp 1046 (D.P.R. 1997); *United States v. Carell*, 681 F. Supp.2d 874 (M.D. Tenn. 2009); *United States ex rel. Condie v. Bd. of Regents of Univ. of California*, C89-3550-FMS, 1993 WL 740185, at *2 (N.D. Cal. Sept. 7, 1993).

### D.   The Reverse FCA Claims Are Not Redundant.

Finally, One Way Drug repeats the Peters Motion's argument regarding the Complaint's reverse FCA count. By alleging that Peters and his Defendant Pharmacies received warnings that the payments they received from federal health care programs were not proper, and that Peters and the Defendant Pharmacies took no action to report and return those funds, the United States has sufficiently alleged that One Way Drug, Peters, and the other Defendant Pharmacies knowingly failed to return money to the Government. As fungible entities all controlled by Peters, this allegation applies equally to One Way Drug and the other Defendant Pharmacies. 31 U.S.C. § 3129(a)(1)(G) prohibits knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government. The term "obligation" is defined to include "any funds that a person receives or retains under [Medicare] or [Medicaid] to which the person … is not entitled under such title." 42

14

U.S.C. § 1320a-7k(d)(4)(B). Further, as applicable here, any "overpayment" (*i.e.*, payment to which a claimant is not entitled) "must be reported and returned" within "60 days after the date on which the overpayment was identified." "More simply stated, … any person who has received an overpayment from Medicare or Medicaid and knowingly fails to report and return it within sixty days after the date on which it was identified has violated the FCA." *United States ex rel. Kane v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 381 (S.D.N.Y. 2015).

Notice or warning that claims did not comply with federal health care program payment terms (including compliance with AKS) starts the clock for reporting and returning the funds that should not have been paid. *Id.* at 388 (interpreting legislative history of the FCA to mean that the timeline to report and return should "begin[] ticking when a provider is put on notice of a potential overpayment"). The complaint identifies several warnings that the two alleged schemes violated the AKS or that prescriptions derived pursuant to the schemes were not appropriate. (*See, e.g.*, Compl. ¶¶ 231 to 232 (compliance advice that the Sales Representatives could not lawfully be paid based on percentage commissions); *id.* ¶ 255 (identifying a Medicare Integrity Contractor audit questioning the legitimacy of the prescriptions billed to the program, the impropriety of which Peters then attempted to conceal)). One Way Drug submitted no refunds to federal health care programs following these warnings. (*Id.* ¶¶ 217, 295).

In addition, plaintiffs are allowed to plead in the alternative. Fed. R. Civ. P. 8(d)(2); *Olympic Coast Inv. v. Seipel*, 208 F. App'x 569. 571 (9th Cir. 2006). Many courts have allowed a party to pursue both affirmative and reverse false claim theories premised on similar facts. *See, e.g., United States v. Bourseau*, 531 F.3d 1159, 1164, n.1 (9th Cir. 2008). The Government prevailed at trial in *Bourseau* and only recovered once for the damages it suffered. *Id*. Alternative pleading could become relevant at later stage of the litigation, depending on the positions taken by Defendants. If for example, during the litigation of this matter, Peters or One Way Drug asserts a lack of knowledge that the federal health care programs claims subject to the Complaint were false at the time they were submitted, the many circumstances signaling those violations and identification of those violations would be relevant.

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss

1    IV.    <u>**CONCLUSION**</u>

2        One Way Drug participated in two kickback schemes designed to extract payments from federal

3    health care programs and other payors, with a role sufficiently described in the Complaint. The

4    Complaint plausibly alleges those schemes with exacting factual basis and detail. One Way Drug's

5    motion should be denied in its entirety.

6                                                Respectfully submitted,

7                                                PHILLIP A. TALBERT
                                                 UNITED STATES ATTORNEY
8

9    Dated: June 13, 2024              By:      <u>*/s/ David E. Thiess*</u>
                                                 DAVID E. THIESS
10                                               STEVEN S. TENNYSON
                                                 Assistant United States Attorneys
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          16

United States' Opposition to
One Way Drug d/b/a Partell Pharmacy's
Motion to Dismiss