MICHELE BECKWITH
Acting United States Attorney
DAVID E. THIESS
TARA A. AMIN
Assistant United States Attorneys
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814
Phone: (916) 554-2700
David.thiess@usdoj.gov
Tara.amin@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:24-cv-00287-WBS-CKD |
|---|---|
| Plaintiff, | |
| v. | OPPOSITION TO SYNERGY MEDICAL SYSTEM LLC'S RENEWED MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. 92). |
| MATTHEW H. PETERS; *et al.*, | |
| Defendants. | HEARING DATE:   July 21, 2025 |
| | TIME:                     1:30 P.M. |

### I.     **INTRODUCTION**

Synergy Medical Systems LLC's ("SMS") Renewed Motion to Set Aside Entry of Default (Dkt. 92, or "Renewed Motion") is a re-engineered version of its initial Motion to Set Aside Default (Dkt. 72, or "First Motion") that this Court has already denied. (Dkt. 84.) Like its First Motion, SMS's Renewed Motion is plainly contradicted by SMS's correspondence with the United States, showing that SMS was aware of this action, was represented by counsel, and chose not to appear in the litigation. And like the First Motion, SMS's Renewed Motion still relies on vague and unsupported assertions of confusion about the need to respond to the litigation, which neither make sense nor justify SMS's course of action. The Court should again deny SMS's motion, but now with prejudice.

**OPPOSITION**                                                                                                                                                  1

1    In denying SMS's First Motion, this Court concluded that SMS is a sophisticated party and was
2 aware of the consequences of its actions when it defaulted, finding SMS's default to be intentional and
3 culpable. (Dkt. 84, at 4.) The Court cited emails between SMS counsel and the United States showing
4 that SMS counsel acknowledged this action, recognized the need to respond, promised to respond, and
5 recognized the United States' intention to file for entry of default if no response was filed. (*Id.* at 3-4.)
6 In the attempt to avoid these clear facts, SMS's Renewed Motion creates a shell game with the
7 company's legal representation. SMS asserts that the legal counsel (Greg Velarud) who stated multiple
8 times that he could and would act on behalf of SMS in this action never actually represented SMS.
9 SMS's Renewed Motion tries to characterize Velarud as "SMS's then-contact" (Dkt. 92 at 17) and assert
10 that Velarud only ever represented SMS's member, Brian Baumgartner (Dkt. 92-1, 92-4 at paragraphs 2
11 to 4, 15). This escape attempt is squarely contradicted by Velarud's straightforward statements.

12    Even if SMS's recent invention regarding its legal representation were credited, SMS still cannot
13 credibly suggest that it was not aware of this action and the need to file a response. SMS was properly
14 served with the First Amended Complaint in April 2024, chose not to enter an appearance or file a
15 responsive pleading, then unmistakably indicated awareness of the Second Amended Complaint
16 throughout August 2024 to January 2025, and still chose not to enter an appearance until March 2025.

17    This Court denied SMS's First Motion without prejudice to allow SMS to submit additional
18 supporting evidence showing why it did not believe it needed to respond to this litigation. SMS's
19 Renewed Motion has not provided any further detail to support or allow analysis of its representations
20 regarding the purported confusion. As this Court described SMS's First Motion, the company's
21 confusion about whether it needed to file a responsive pleading was based on unspecified
22 representations SMS says were made to Baumgartner by the United States. (*See* Dkt. 84 at 3.) But
23 SMS's Renewed Motion repeats the same empty assertions regarding SMS's confusion. (*See, e.g.*, Dkt.
24 92 at 15, generically alleging "contradictory representations and omissions" by the Government.)

25    Unable to support its prior claims with credible evidence, SMS's Renewed Motion attempts a
26 new suggestion: that SMS did not believe there was an operative complaint in effect (Dkt. 92 at 13),
27 because the Second Amended Complaint was not separately served. Like SMS's denial about its
28 representation by counsel, this claim is plainly contradicted by its email correspondence with the United

States, which expressly discussed the Second Amended Complaint and the United States' desire to proceed with the litigation. SMS's accompanying assertion that there was a "procedural defect" in service is wholly unfounded.

Because SMS's culpability has been clear and SMS has focused on its claims of confusion, the Court's Order denying SMS's First Motion did not need to address the other grounds for denying SMS's request to set aside default—the lack of meritorious defenses offered by SMS and the prejudice that would be brought upon the United States. (Dkt. 84 at 2.) These independent grounds for denying SMS's motion remain. SMS's Renewed Motion repeats the same cursory arguments on those grounds as were levied by its First Motion. The exception is that whereas the First Motion asserted that Baumgartner's settlement with the United States Attorney's Office for the District of Oregon was silently "on behalf of SMS" (Dkt. 72 at 6, 11), the Renewed Motion now takes the contradictory position that because that settlement agreement did not release or address SMS's liability, SMS must not be liable (Dkt. 92 at 19). These arguments are still unsupported and illogical, and still do not come close to meeting SMS's burden to show good cause.

Given SMS's inability to justify its default despite the ample opportunities provided, the Court should deny SMS's Renewed Motion with prejudice.

## II. FACTUAL BACKGROUND

The facts necessary to resolve this motion are straightforward and cannot be genuinely disputed:

1. SMS was properly served with a summons and the First Amended Complaint on April 5, 2024. (Dkt. 14) (proof of service); (Dkt. 92 at 6) (SMS admits to being served). SMS did not enter an appearance or file any responsive pleading.
2. The United States filed its Second Amended Complaint on July 30, 2024. No new claims against SMS were added. (Dkt. 50.)
3. On August 1, 2024, SMS's counsel (Velarud) confirmed to the United States that he was representing SMS, had authority to act on behalf of SMS, and understood a responsive pleading would be necessary to avoid default. (Thiess Decl., Exhibit A.)

4. On August 5, 2024, the United States replied to Velarud, referencing the Second Amended Complaint. (*Id*.)  The next day, Velarud replied, "I'll follow up with you after I've had a chance to review the 2nd Amended Complaint." (*Id*.)

5. The United States provided courtesy notice to Velarud on August 23, 2024, that United States would soon seek default judgment, "if you are interested in filing an Answer on behalf of the Synergy parties." (Thiess Decl., Exhibit B.)

6. Shortly thereafter, Velarud replied that SMS may add another attorney alongside Velarud, but "[i]n any event, I'll make sure a responsive pleading is filed." (*Id*.)

7. On September 9, 2024, Velarud emailed the United States that he had recommended that SMS seek separate counsel to take over for him.  Velarud asked if the United States could "wait 7-10 days," in which case "both Synergy defendants should have new counsel filing a response." (*Id*.)

8. The United States replied that by September 20, it expected to move for default on the parties that had not appeared in the case and requested to be kept apprised regarding the filing of a responsive pleading. (*Id.*)

9. On September 13, 2024, the United States requested an update from Velarud regarding a responsive pleading. (*Id*.)  Velarud replied that he had spoken with counsel Ian Craig about replacing Velarud as counsel for SMS and Synergy RX LLC.  Velarud acknowledged that the United States was "ready to have answers filed and move the litigation forward" and stated that "Mr. Craig is aware" of that position, but requested four additional weeks. (*Id.*)

10. On September 13, 2024, the United States replied that it did not want to wait further because numerous other defendants had filed Answers, the Joint Status Report had been filed, and the litigation was ready to proceed on the Court's schedule. (*Id.*)

11. On September 23, 2024, more than eight months after all parties had been served and one month after providing courtesy notice to SMS, the United States moved for entry of default as to SMS and four other defendants. (Dkt. 58.)

12. The Clerk of Court entered default on September 24, 2024. (Dkt. 63).

13. SMS and its counsel learned of the default by no later than October 16, 2024. (*See* Dkt. 72 at 9.)

**OPPOSITION**                                                                                                                        4

14. Despite this knowledge, SMS entered no appearance and took no action to remedy the default for more than 170 days following the entry of default. (Dkt. 69; Dkt. 72.)

SMS did not reference many of the above communications in its Renewed Motion, after referencing none of them in its First Motion. In short, SMS was represented by counsel, fully aware of the litigation, and capable of responding, but chose not to answer the complaint for nearly a year.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c). Determining whether good cause exists turns on three factors: (1) whether the defaulting party engaged in culpable conduct that led to the default, (2) whether the opposing party would be prejudiced if the default is set aside, or (3) whether the defaulting party has a meritorious defense. *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015); *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). Consistent with this Court's denial of SMS's First Motion (Dkt. 84), the presence of any one of these factors is sufficient reason for the Court to refuse to set aside default. *Aguilar*, 782 F.3d at 1105; *Mesle*, 615 F.3d at 1091; *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 816 (9th Cir. 1985) (affirming denial of request to lift default based on culpability).

As the party seeking to set aside the default, SMS bears the burden of showing all three factors. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) (*overruled on other grounds as stated in Delgado v. Dempsey's Adult Care Homes, LLC*, No. 22-15176, 2023 WL 3034263, at *1 (9th Cir. Apr. 21, 2023)). The policy preference to decide cases on the merits is not absolute and does not overcome a represented party's deliberate failure to respond to a complaint. *S.E.C. v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("The defendant who chooses not to put the plaintiff to its proof, but instead allows default judgment to be entered and waits, for whatever reason, … should have to bear the consequences of such delay."); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Especially relevant here, a party is culpable when it "has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1093 (emphasis omitted). Any conduct that is willful, deliberate, or bad faith in the failure to file an answer qualifies as intentional. *TCI Group Life Ins.* Plan, 244 F.3d at 697. But, when "considering a legally sophisticated

**OPPOSITION** 5

party's culpability in a default, an understanding of the consequences of its actions may be <u>assumed</u>, and with it, intentionality." *Mesle*, 615 F.3d at 1093 (emphasis added).  In that situation, no finding of willful, deliberate, or bad faith conduct is necessary.  *Id.*  Thus, a party that is represented by legal counsel, has consulted with a lawyer, has experience in other legal actions, or has general familiarity with the legal process is presumed to understand the consequences and to have perceived an advantage in that choice.  *See TCI Grp. Life Ins. Plan*, 244 F.3d at 699, n.6; *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).

## IV.    ARGUMENT

### A.    SMS's Conduct Was Culpable.

#### 1.    SMS Has Been Legally Represented and Deliberately Chose Not to Respond.

SMS was represented by counsel throughout the period after the Second Amended Complaint was filed, as Velarud repeatedly confirmed.  In emails to the United States, on separate occasions throughout August and September 2024, Velarud:

(a) stated that he "can immediately file a response pleading if need be on behalf of the other Synergy defendant, Synergy Medical Systems LLC";

(b) asked and affirmed, "[l]et me know if you want me to file a response to avoid a default judgement application against Synergy Medical Systems LLC and I will do so";

(c) affirmed that he would "make sure a responsive pleading is filed" on behalf of SMS; and

(d) offered, "[i]f you want a responsive pleading filed now, I can put something together," after which point Velarud would "withdraw" as counsel for SMS.  (Thiess Decl., Exhibits A and B.)

Velarud's legal representation of SMS was unmistakable.  But SMS brazenly asserts to the Court that Velarud never represented SMS (Dkt. 92-1; Dkt. 92-4 at ¶¶ 2-4, 15) and that Velarud was merely SMS's "contact" (Dkt. 92 at 17).  These fictitious claims are evidence of SMS's willfulness and are sufficient basis, on their own, to deny SMS's request to set aside default.

Indeed, Velarud advised SMS regarding this action for an extended period.  His emails with the United States in August 2024 show Velarud making assessments about whether SMS and/or Synergy RX LLC should file responsive pleadings, relying on his familiarity with the parties and details of the

**OPPOSITION**                                                                                                                                                  6

1  action. On August 1, 2024, Velarud stated that he "didn't file a responsive pleading to the civil
2  complaint on behalf of Synergy RX LLC (DBA Synergy RX)" because while that entity played a
3  prominent role in transitioning control of the SMS pharmacy to Defendant Matthew Peters, Velarud
4  believed it to be "defunct." (Thiess Decl., Exhibit A.) Then, Velarud stated he could "immediately file
5  a response pleading" on behalf of SMS, but weighed whether to do so, based on his assertions of SMS's
6  role in the relevant relationships. (*Id*.)

7  Velarud's exit from this matter and SMS's engagement of other counsel in September 2024 do
8  not excuse SMS from its own persistent choice not to enter this action. The United States provided SMS
9  courtesy notice on August 23, 2024, that it intended to seek default, and provided follow-up notice on
10 September 9, 2024. When Velarud then informed the United States that Craig was taking his place as
11 SMS counsel on September 13, 2024, Craig was fully aware of the Second Amended Complaint and the
12 United States' position on the litigation going forward. (Thiess Decl., Exhibit B ("Mr. Craig is
13 aware.").) Given these facts, SMS's suggestions that the United States was trying to take advantage of
14 an unrepresented party are not serious. (*See, e.g*., Dkt. 92 at 12.)

15 SMS's continued choice not to enter this litigation after it switched counsel reveals its intentions
16 and calculations. SMS acknowledges that it learned of the default shortly after it was entered by the
17 Court but chose to delay. (Dkt. 72 at 9-10 ("Counsel for SMShas [*sic*] delayed seeking Court
18 intervention until this time").) It did not enter an appearance or move to set aside the default until six
19 months after the default was entered and nearly one year after SMS was served in the litigation. SMS's
20 timeline in its Renewed Motion attempts to sweep away numerous months of inaction with nonspecific
21 references such as "further attempts at discussion with Plaintiff." (Dkt. 92 at 10.) As SMS recognizes
22 (Dkt. 92 at 17), it is well-established that settlement discussions do not excuse nonappearance, as that
23 would allow parties to evade their obligations by engaging in basic-level negotiations. *See, e.g.,*
24 *Franchise Holding II, Ltd. Liab. Co. v. Huntington Rests. Grp., Inc*., 375 F.3d 922, 926 (9th Cir. 2004);
25 *Medline Indus. V. Medline Rx Fin., LLC,* 218 F.R.D. 170, 172 (N.D. Ill. 2003). SMS's extended delay
26 shows its intentionality.

27 SMS cannot be saved by its passing, baseless assertion that the United States asked SMS to delay
28 its motion to set aside default, after default had been entered. (Dkt. 92 at 17.) SMS has pointed to

**OPPOSITION** 7

nothing in support, except its own email summary of a conversation with the United States (Dkt. 92-8 at 7), which the United States expressly refuted in reply (Dkt. 92-8 at 7 ("Without agreeing with any of your summary, below, it is your decision whether to file a motion to set aside default."))  On January 17, 2025, the United States again stated clearly to SMS counsel, "[t]he decision regarding whether to send a letter to the court and/or to file a Motion to Set Aside are yours.  The same is true regarding the timing of such materials, if you elect to … submit and/or file." (Dkt. 92-8 at 2.)

Courts refuse to set aside default in cases where the defaulting party did not have nearly the access to informed decision-making or representation as SMS did here.  For example, in *Castro v. C&C Verde LLC*, the Ninth Circuit affirmed the district court's denial of a motion to set aside default for parties that had previously consulted with legal counsel in relation to similar litigation, though they had not consulted with counsel in the litigation where they defaulted, finding those parties to be legally sophisticated parties who had constructive or actual notice of the complaint and failed to answer. *Castro*, Nos. 23-15488 and 23-16217, 2024 WL 5494392, at *1 (9th Cir. Mar. 28, 2025).

This case is far from the circumstances in *Mesle*, which involved an unrepresented "layman working without aid of an attorney," who then engaged a lawyer and filed a motion to set aside default one month after it was entered.  *See United States v. Mesle*, 615 F.3d 1085, 1090-91 (9th Cir. 2010). But even when defendants are genuinely unrepresented (which was never the case here), there are limits on defendants' ability to excuse default.  This Court has refused to set aside default when unrepresented defendants delay the process of seeking counsel and use those delays as the basis to impede litigation and later set aside default.  *See United States v. Salazar*, 1:23-cv-01282, 2025 WL 1177667 (E.D. Cal. Apr. 23, 2025).  Unlike these cases, SMS has been continuously represented by legal counsel and has remained an informed legal party cognizant of its obligations.

SMS was fully "aware of the relevant federal law … fully informed of the legal consequences of failing to respond … [and] sufficiently sophisticated and experienced . . . to protect its interests." *Id*. *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).  It knew it was a defendant in this case, which concerns SMS's admitted "interactions with Mr. Peters." (Dkt. 72 at 12; Dkt. 50 at ¶¶ 12, 264 to 266).  If SMS believed it was wrongly named as a defendant, it could have contested that in several ways.  But its failure to respond demonstrates its belief that inaction provided "some advantage

**OPPOSITION**                                                                                                                        8

to [itself]." *TCI Grp.*, 244 F.3d at 699, n.6.

### B. SMS's New Claim of Defective Service Is Baseless.

SMS's argument that it should be excused from its default based on a purported failure of service is rooted in unfounded representations about both SMS's knowledge of the action and the Federal Rules of Civil Procedure. As SMS does not contest, the United States properly served SMS with the First Amended Complaint on April 5, 2024, over 350 days before SMS moved to set aside default. (Dkt. 14 at 9 (Return of Service); Dkt. 72 at 8.) The United States filed a Second Amended Complaint on July 30, 2024. (Dkt. 50.) Under Federal Rule of Civil Procedure 5(a)(2), an amended complaint does not need to be served on a defaulted party if the amended complaint does not assert new claims against the defaulted party. *See generally Employee Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 999 (9th Cir. 2007); *Commercial Credit Grp., Inc. v. No Limit Logistics*, Inc., No. 1:21-cv-00936, 2023 WL 5427932, at *2 n.4 (E.D. Cal. Aug. 23, 2023) (collecting cases); *see also Kremen v. Cohen*, No. 05-cv-1319, 2007 WL 2340262 (S.D. Cal. Aug. 14, 2007) (upholding default against moving defendants even though they "were defaulted in connection with the now-inoperative FAC, which in all material terms is identical to the SAC as far as the [defaulted defendants] are concerned.") The Second Amended Complaint did not levy any new causes of action against SMS, and SMS did not need to be served. (*Compare* Dkt. 50, Claims for Relief; Dkt. 5, Claims for Relief).

Added factual allegations are not new claims. *See JBR, Inc. v. Café Don Paco, Inc.*, No. 12-cv-02377, 2014 WL 5034292, at *1 (N.D. Cal. Sep. 30, 2014) ("[T]he addition of new factual allegations in the complaint, without the addition of a new claim, does not require service of the amended pleading on a party in default for failure appear."). SMS does not cite any case law or other legal authority in its attempt to suggest that added facts are equivalent to new claims for relief under Rule 5(a)(2). The Second Amended Complaint added very limited factual allegations regarding SMS, including that claims for medications dispensed by Synergy RX LLC were submitted to federal health care programs in the name of SMS. (Dkt. 50 at ¶ 12.) None of the added facts in the Second Amended Complaint comes close to constituting a new claim for relief.

Regardless, SMS's service argument fails on account of SMS's actual notice of this action and the Second Amended Complaint. If a defendant receives either actual notice or constructive notice of a

**OPPOSITION** 9

complaint, that suffices when evaluating the defendant's culpability in failing to respond to the complaint.  *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (*citing Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986)); *see also S.E.C. v. Internet Sols. For Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) (finding that a defendant moving to vacate default based on improper service of process bears the burden to show that it is entitled to relief).  SMS has known about this proceeding since it was served with the First Amended Complaint, which was properly served in April 2024.  SMS was also expressly aware of the Second Amended Complaint.  In an August 6, 2024, email to the United States, SMS counsel Velarud acknowledged the Second Amended Complaint and indicated he would review it.  (Thiess Decl., Exhibit A.)  For months thereafter, SMS counsel continued to evaluate whether to file a responsive pleading to the Second Amended Complaint.  SMS's defective service argument ends on that point alone and SMS has not met its burden.

**C.     SMS Has Not Established Any Meritorious Defense.**

While SMS's Renewed Motion should again be denied based on its culpable conduct alone, SMS's failure to establish viable defenses is added reason to deny its motion.  A defendant seeking to set aside its default has the burden to establish "specific facts that would constitute a defense" sufficient to demonstrate some likelihood that a trial would yield a result contrary to the default.  *United States v. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010).  As the Ninth Circuit has consistently held, general denials of the allegations in a complaint are insufficient to establish defenses relevant to setting aside a default. *See Bizar v. Dee*, 618 Fed. Appx. 913, 916 (9th Cir. 2015); *Franchise Holding II, Ltd. Liab. Co. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004); *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).  As such, a defendant's vague assertions and conclusory statements are not considered.  *Franchise Holding II, Ltd. Liab. Co.*, 375 F.3d at 926.

SMS vaguely suggests that "the claims against SMS are likely barred, in whole or part" by the False Claims Act's six-year statute of limitations.  (Dkt. 92 at 18.)  Without any support or even a related statement in its declaration, SMS asserts that "no conduct involving SMS took place after [January 1, 2018]."  (*Id.*)  Courts consistently refuse to credit this type of conclusory statement.  *See Franchise Holding*, 375 F.3d at 926; *United States v. Salazar*, 1:23-cv-01282, 2025 WL 1177667, at *5

(E.D. Cal. Apr. 23, 2025). But even if it were supported, this assertion is not a defense to liability for false claims submitted during the limitations period that were caused by or resulted from SMS's conduct. *See United States v. Scan Health Plan*, No. CV 09-5013, 2017 WL 11628884 (C.D. Cal. October 5, 2017) ("each alleged false claim is an individual violation of the False Claims Act that gives rise to a separate statutory remedy.") (citations omitted); *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 687 (E.D. Pa. 2009) ("[W]here there are multiple false claims ... the statute of limitations for each claim runs from the date each claim accrued."). That is what the United States has alleged here. (Dkt. 50 at ¶¶ 3, 12, 264.)

SMS's argument that Brian Baumgartner's settlement with the United States Attorney's Office for the District of Oregon somehow provides a defense here is similarly vague and unsupported. (Dkt. 92 at 19 (claiming the Baumgartner settlement "and surrounding communications" reflected a "mutual understanding that the matter had been resolved".) Whereas its First Motion argued that SMS was included in this settlement agreement (Dkt. 72 at 6, 11), SMS now acknowledges that the settlement excluded SMS from its scope (Dkt. 92 at 19), as it did all other entities and individuals who were not Baumgartner (Dkt. 92-5 at 1, 8). But, SMS now appears to make the nonsensical argument that the settlement being limited to Baumgartner's liability is evidence that SMS has no liability. (Dkt. 92 at 19.) The Baumgartner agreement did not release SMS from False Claims Act liability and has no bearing on this action.

SMS's assertion that the "Government's case theory [has] consistently pointed to Matthew Peters" (Dkt. 92 at 19) is also not a defense to SMS's liability. Obviously, Peters's status as a defendant, or even a ringleader, does not preclude SMS from having False Claims Act liability for its conduct. Nor does SMS's generic proclamation "adamantly maintain[ing]" it did not knowingly submit false claims or allow its billing credentials to be used (Dkt. 92 at 20) provide any specific facts that approach the standard for setting aside a default.

**D.     Setting Aside the Default Would Prejudice the United States.**

Setting aside the default now would significantly prejudice the United States. In this context, prejudice means impairing the plaintiff's ability to pursue its claim effectively. *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. That impairment includes not only lost evidence but also "increased difficulties of

**OPPOSITION**                                                                                                                            11

discovery, or greater opportunity for fraud or collusion." *Id*.

Here, SMS's nearly year-long delay would upend this complex, multi-defendant litigation. The passage of time and the challenges inherent in evading discovery and enforcing a judgment standing alone ordinarily do constitute cognizable prejudice. *See Francois & Co., LLC v. Nadeau*, 334 F.R.D. 588, 599 (C.D. Cal. Apr. 7, 2020). Allowing SMS to re-enter the case now after it strategically sat on the sidelines for nearly a year would undermine the United States' interest in the "just, speedy, and inexpensive determination" of this action, not just against SMS, but also against its co-conspirators. Fed. R. Civ. P. 1.

For example, SMS provides no evidence that it has preserved relevant documents or communications. Its disregard for basic litigation obligations, such as responding to the complaint, raises a risk that evidence has been lost. If SMS had taken preservation seriously, it could have submitted a declaration regarding its evidence preservation and integrity. Even after the United States raised this issue in its Opposition to SMS's First Motion (Dkt. 78 at 8), SMS still has not done so. Under the circumstances, SMS has not come close to meeting its burden of establishing that vacating the default would not cause prejudice.

## V. CONCLUSION

After two attempts, SMS has presented no good cause to set aside its default. Neither SMS's First Motion nor its Renewed Motion has provided anything beyond false and nonspecific assertions of confusion. SMS is culpable because it was represented by legal counsel and chose not to appear or participate in this case. It has not provided any meritorious defense or shown that the United States would not be prejudiced by SMS's inaction. The court should deny SMS's Renewed Motion with prejudice.

Dated: June 29, 2025                               UNITED STATES OF AMERICA

                                                   MICHELE BECKWITH
                                                   Acting United States Attorney

                                          By:      /s/ *David E. Thiess*
                                                   DAVID E. THIESS
                                                   TARA A. AMIN
                                                   Assistant United States Attorneys