CLINTON MIKEL, SBN 251319
The Health Law Partners, P.C.
32000 Northwestern HWY., Ste. 240
Farmington Hills, MI 48334
Telephone: (248) 996-8510
Facsimile: (248) 996-8525
cmikel@thehlp.com

IAN W. CRAIG, SBN 160651
Law Offices of Ian W. Craig, PC
700 University Ave., Ste. 100
Sacramento, CA 95825
Telephone: (916) 277-8580
Facsimile: (916) 914-1803
Ian@IWC-Law.com

Attorneys for Defendant Synergy Medical Systems, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW H. PETERS, BAYVIEW SPECIALTY SERVICES LLC, COASTLINE SPECIALTY SERVICES LLC, STRAND VIEW CORPORATION, INNOVATIVE SPECIALTY SERVICES LLC, PARAGON PARTNERS LLC (D/B/A PARAGON MEDICAL PARTNERS), CARDEA CONSULTING LLC, PRAXIS MARKETING SERVICES LLC, PROFESSIONAL RX PHARMACY LLC, INLAND MEDICAL CONSULTANTS LLC (D/B/A ADVANCED THERAPEUTICS), PORTLAND PROFESSIONAL PHARMACY LLC, SUNRISE PHARMACY LLC, PROFESSIONAL 205 PHARMACY LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), SYNERGY MEDICAL SYSTEMS LLC (D/B/A SYNERGY RX), SYNERGY RX LLC (D/B/A SYNERGY RX), PRESTIGE PROFESSIONAL PHARMACY, JMSP LLC (D/B/A PROFESSIONAL CENTER 205 PHARMACY), MPKM, LLC (D/B/A PROFESSIONAL CENTER PHARMACY), ONE WAY | Case No. 2:24-cv-00287-CKD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Hearing Date: August 4, 2025<br>Time: 1:30 P.M.<br>Courtroom: 5, 14th Floor<br>Judge: Hon. W. B. Shubb |

1

DRUG LLC (D/B/A PARTELL PHARMACY), PARTELL PHARMACY LLC, OPTIMUM CARE PHARMACY INC. (D/B/A MARBELLA PHARMACY), GLENDALE PHARMACY LLC, and LAKE FOREST PHARMACY (D/B/A LAKEFOREST PHARMACY),

Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Opposition (Dkt. 93) blatantly fails to overcome the fatal flaw in its attempt to enforce the default: namely, that Plaintiff never served the operative Second Amended Complaint ("**SAC**") on Synergy Medical Systems, LLC ("SMS") before seeking its default. Instead of simply permitting SMS to file its Answer and avoid wasting this Court's resources, Plaintiff doubles down on its attempt to enforce a default on a *superseded* pleading.

To recap, Plaintiff's default was not entered until September 26, 2024 (Dkt. 63). However, the default was entered as to the First Amended Complaint ("FAC"), which was dismissed by the Court on July 10, 2024 (Dkt. 49). The SAC was filed on July 30, 2024, *but never served on SMS*. The SAC superseded the FAC and was required to be served on SMS. Plaintiff's failure to do so renders the default moot.

However, even if Plaintiff had taken SMS's default prior to the filing of the SAC, Plaintiff was required to serve the SAC under FRCP Rule 5(a)(2) because the SAC asserted new and/or additional claims for relief against SMS. Both the SAC and this Court's Order dismissing the FAC (Dkt. 49) underscores the service requirement. In its Order, the Court expressly found the FAC deficient as to all Defendants, including SMS (named in the FAC as a "Pharmacy Defendant"), due to its failure to plead fraud with sufficient particularity and provide "adequate notice to allow them to defend the charge." (Dkt. 49 at 13). These deficiencies were remedied, at Plaintiff's own initiative, by adding new claims for relief and theories of liability in the SAC,

2

including against SMS. Yet despite this fundamental shift, Plaintiff failed to serve the SAC on SMS, and now seeks default based on a superseded, dismissed complaint. This tactic contravenes Rule 5, fails to provide SMS with due process, undermines the integrity of the judicial process, and warrants vacating the entry of default.

Plaintiff attempts to sidestep the issue through selective quotations, mischaracterizations of the record, and legally incorrect reliance on Rule 5(a)(2) should be rejected.  The fact remains that SMS was not in default when the SAC was filed (and not served).

Plaintiff's Response similarly overstates the significance of specific email correspondence with Oregon attorney Gregory Veralrud (who is not, and has never been counsel of record for SMS in this action), who repeatedly disclaimed representation of SMS and whose involvement did not substitute for proper service on SMS. In reality, Plaintiff knew SMS remained unrepresented, yet proceeded to seek default on the FAC without extending basic notice or courtesy.

Contrary to Plaintiff's assertions, SMS acted promptly and in good faith upon learning of the default, and has presented multiple meritorious defenses that warrant resolution on the merits. Under the liberal standard of Rule 55(c), and in the interest of fairness, the entry of default should be vacated.

**ARGUMENT**

I.  **Plaintiff's Entry of Default Must Be Vacated Because Plaintiff Failed to Serve the Operative Complaint**

   **A. Fed. R. Civ. P. 5(a)(1) Required Service of the Second Amended Complaint Because SMS Had Not Been Defaulted When It Was Filed**

Rule 5(a)(1)(B) explicitly states that amended complaints must be served on all parties unless the court orders otherwise. Fed. R. Civ. P. 5(a)(1)(B). The rule does not distinguish

3

between defendants who have failed to respond to the original complaint and those who have actively participated in the litigation. *Id*. The only exception under Rule 5(a)(2) applies to parties who are "in default for failing to appear," which is not the case here since default was not entered against SMS when the SAC was filed. Plaintiff's attempts to assert the contrary are frivolous and wholly without merit.

Plaintiff's opposition notably avoids directly addressing the dispositive procedural failure at issue: *SMS was never served with the operative SAC*. Instead, Plaintiff attempts to paper over this defect by improperly invoking and relying on Rule 5(a)(2), claiming that service was unnecessary because SMS was a defaulted party (*See* Dkt. 93 at 9). Such a claim is wholly without merit. SMS had not defaulted when the SAC was filed on July 30, 2024, nor had Plaintiff even sought default at that time.[1]

Plaintiff is undoubtedly a sophisticated litigant. As such, one would expect it to understand that a party does not become "in default" simply because the government chooses to treat it as such. Fed. R. Civ. P. 55. Rule 5(a)(2) applies to parties ***already in default*** per the Court, not to those whom a plaintiff subjectively believes to be in default without application and Court order of the same. The notion that Plaintiff could unilaterally excuse itself from Rule 5 service obligations by later seeking default on a prior, now-superseded/dismissed complaint, without ever serving the operative pleading, finds no support in the Federal Rules or case law.

Plaintiff's briefing is telling: rather than simply acknowledging its failure to serve SMS (and other Defendants) with the SAC, it engages in tactical ambiguity, attempting to pull the wool over this Court's eyes in futile attempts to divert attention from this central and fatal flaw. However, no amount of post hoc framing alters the fact that Plaintiff was ***required*** to complete

---

[1] Notably, Plaintiff only sought a default previously against Defendant Matthew Peters. Dkt. 20.

4

RENEWED MOTION TO SET ASIDE DEFAULT

service of the SAC on SMS under Rule 5(a)(1), and the failure to do so renders the subsequent default improper.

At the time the SAC was filed, SMS had not defaulted and was therefore entitled to service under Rule 5(a)(1). Plaintiff's failure to serve the SAC before seeking default renders the entry of default procedurally invalid. Allowing default to stand under these circumstances would undermine both due process and the integrity of Rule 5. The Court should reject this tactic and vacate the default on this ground alone.

### B. Even Under Rule 5(a)(2), Service Was Required Due to New Allegations and Theories in the SAC

Even assuming arguendo that Rule 5(a)(2) applied — which it did not — service of the SAC would still have been required because the SAC asserted new and additional claims for relief against SMS.

This Court's Order granting the Motion to Dismiss as to the FAC (Dkt 49) highlights the defects in the FAC, *including the failure to provide Defendants (including SMS) adequate notice to defend the claims in the FAC*. To remedy these defects, the SAC included new or additional claims for relief. The Court's Order stated, in pertinent part, the following:

(1) The FAC named SMS as one of the "pharmacy defendants" (p.2:22-23)[2];

(2) "Because the pharmacies all played the "same role" in the centrally operated scheme, the government may collectively plead the allegations against the pharmacies (including SMS) (p.11:15-17);

(3) ". . . the government must identify *when the reimbursement claims for which it seeks to recover damages were submitted*, thereby providing defendants (including SMS) with

---

[2] The Moving Parties included "pharmacy defendants" Partell Pharmacy LLC and One Way Drug LLC (Dkt. 32-33).

5

RENEWED MOTION TO SET ASIDE DEFAULT

"*adequate notice to allow them to defend the charge.*" (p.13:6-9);

(4) "Accordingly, because the court concludes that the government has failed to plead its FCA claims with particularity in this respect, the first through fourth claims will be dismissed with leave to amend" (Dkt. 49 at 13); and

(5) "Because the government has failed to plead the underlying fraud with particularity, the unjust enrichment and payment by mistake claims [Counts 5 and 6]-- which are premised on that fraud (see FAC ¶¶ 297-303) -- also fail." (Dkt.49 at 14).

As a result of—and in response to-- the Court's Order, the SAC substantially revised the government's theory of liability, adding new and additional claims for relief that directly implicated allegations regarding SMS's conduct. Examples include, but are not limited to, identifying new dates when Defendants' (including SMS) reimbursement claims were submitted, expanding the timeframe of alleged wrongdoing by SMS and other Defendants, the use of SMS's NPI to submit allegedly false claims, and introducing new claims such as failure to report/return overpayments (see, e.g., SAC, Dkt. 50 at ¶¶ 3; 273; 282; 291; 296; 299; 301 ("From 2018 through 2020, the United States, through the federal health care programs, paid Defendant Pharmacies as a result of mistaken understandings of fact").

Courts have routinely held that such amendments trigger Rule 5(a)(2)'s heightened service requirement. *See* The Rutter Group, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial*, § 8:1437 ("An amended complaint need not be served on defendants whose default has been entered for failure to respond to the original complaint ... unless the amendment asserts new or additional claims for relief against those defendants....*If new or additional claims for relief are sought against the party in default, the amendment 'opens' the default and new service is required under Rule 4.*" (emphasis added) (citing Fed. R. Civ. P. 5(a)(2)); *Blair v. City of Worcester*, 522 F.3d 105, 109

6

(1st Cir. 2008); *D'Angelo v. Potter*, 221 F.R.D. 289, 293 (D. Mass. 2004)).

Plaintiff's opposition fails to grapple with the substance of these changes. Rather than address each of the specific examples put forth by SMS in its Motion, Plaintiff erroneously relies upon *JBR, Inc. v. Café Don Paco, Inc.*, No. 12-cv-02377, 2014 WL 5034292, at *1 (N.D. Cal. Sep. 30, 2014) to support its belief that "added factual allegations are not new claims." (See Dkt. 93 at 9). Such an assertion is inaccurate.

On entry of default, all factual allegations in the complaint are generally taken as true, except for those related to damages. *See Tele Video Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987). Thus, allowing entry of default on an amended complaint that was never served would contravene the objectives embodied by Rules 4 and 5(a)(2) that a defendant receive notice. *IBEW Loc. 595 Health & Welfare Tr. Fund v. Givens Elec., Inc.*, No. C 09-06076 RS, 2011 WL 2414346 (N.D. Cal. June 15, 2011). Because the SAC introduced materially new allegations and theories of liability, including claims for relief that were not present in the First Amended Complaint, Plaintiff was required to serve the SAC on SMS under Rule 5(a)(2). Its failure to do so renders the default procedurally improper, and it cannot now rely on selective authority or post hoc rationalizations to cure that defect. Entry of default based on an unserved and ultimately superseded complaint is fundamentally incompatible with due process and must be vacated.

II. **SMS Was Never Represented by Gregory Veralrud, and Plaintiff Was Aware That SMS Remained Unrepresented at the Time of Default**

In Plaintiff's desperate attempt to avoid litigating this matter on the merits, its Opposition relies heavily on cherry-picked email exchanges with a non-party counsel, Gregory Veralrud – taken without the full context – to assert that SMS was represented by counsel during the critical period leading up to default. That position is demonstrably false and directly contradicted by Mr.

7

Veralrud's sworn declaration. Mr. Veralrud represented Brian Baumgartner in his individual capacity during the government's investigation of him, but never represented SMS in this litigation or otherwise. See **EXHIBIT A –** Veralrud Decl. ¶3.

More importantly, Plaintiff was fully aware of this distinction. In or around July to September 2024, Mr. Veralrud expressly advised AUSA Thiess that he did not and could not represent SMS due to ethical conflicts and lack of California licensure. See *Id*. ¶¶4, 9. He further communicated that SMS was in the process of retaining separate counsel and requested additional time for that process to be completed. *Id*. Rather than respond or offer the professional courtesy of a brief extension, Plaintiff silently moved forward with default, providing no notice to SMS or confirming representation.

Plaintiff now attempts to distort the record by presenting isolated fragments of these communications while ignoring the broader context and oral exchanges that preceded and followed them. See *Id*. For example, Plaintiff selectively cites an email in which Mr. Veralrud offered, out of professional courtesy, to assist with filing a response to avoid default. But Plaintiff omits the surrounding emails and conversations, in which Mr. Veralrud made clear that he was not counsel for SMS and lacked the authority to act on its behalf. See *Id*. ¶¶4, 9.

Had Plaintiff engaged candidly or extended a minimal opportunity for SMS to retain counsel, this dispute could have been avoided altogether. Instead, Plaintiff elected to proceed with default.

### III. SMS's Conduct Was Not Culpable and Does Not Justify the Entry of Default

A defendant's conduct is culpable only where there is "no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001); see also *United States v. Mesle*, 615 F.3d

8

1085, 1092 (9th Cir. 2010). Plaintiff's Opposition fails to meet that standard.

SMS's failure to appear was not the product of bad faith or a calculated attempt to avoid the litigation. Instead, it arose from legitimate confusion surrounding the Government's own representations and procedural omissions. Throughout its years-long investigation, DOJ consistently identified Synergy RX LLC, and not SMS, as the relevant entity associated with the allegedly fraudulent billing activity. The settlement agreement signed with Mr. Baumgartner in July 2024 referred only to Synergy RX, omitting any mention of SMS. This omission reasonably led SMS to believe it was not a party to the dispute and that the government considered its role resolved.

Plaintiff now argues that SMS's failure to respond was deliberate, but ignores its own role in creating that misunderstanding. Plaintiff never served the operative SAC, and never confirmed whether SMS had retained counsel. See **EXHIBIT A –** Veralrud Decl. ¶13. Plaintiff's brief also fails to mention that Gregory Veralrud expressly advised AUSA Thiess that he did not and could not represent SMS, and requested time for SMS to obtain representation. *Id*. ¶¶4, 9. The DOJ never responded to that request and instead moved for default days later, without notice and without providing the SAC to any known contact or representative for SMS.

This is not culpable conduct; it is precisely the type of "confusion and misunderstanding" that courts routinely find sufficient to negate culpability under Rule 55(c). See *Mesle*, 615 F.3d at 1092. Indeed, Plaintiff's argument hinges on SMS's failure to respond to a complaint it never received — a position fundamentally at odds with the due process principles that underlie the default rules. See *Heidenthal*, 826 F.2d at 917–18.

Once SMS retained counsel in October 2024, it initiated contact with Plaintiff to clarify its status and explore a potential resolution without burdening the Court. Plaintiff was fully aware

that SMS was in the process of retaining counsel when it sought default, and yet it declined to extend professional courtesy or meaningful dialogue by notifying anyone on behalf of SMS that it intended to take its default. Although SMS did not formally enter an appearance until January 2025 or file its initial motion to set aside until March, those delays were not the product of gamesmanship or indifference: they reflected a continuing effort to engage cooperatively, evaluate the Government's shifting theories, and avoid unnecessary motion practice if possible. See **EXHIBIT B** – Mikel Declaration.

Courts routinely distinguish between tactical delay and reasonable missteps made during periods of confusion or attempted resolution. See *Mesle*, 615 F.3d at 1092–93. This case falls squarely within the latter category. The delay was not willful, it did not prejudice Plaintiff, and it occurred in the context of efforts to bring the matter to a fair and informed resolution. That is not culpable conduct — and certainly not the kind of "devious, deliberate, or bad faith" failure to respond that justifies the harsh remedy of default.

### IV. SMS Has Presented Multiple Meritorious Defenses Warranting Adjudication on the Merits

Plaintiff attempts to dismiss SMS's defenses as "unsupported" or "conclusory," but that argument fails both legally and factually. At this stage, SMS need only show that it has articulated "a meritorious defense to the claims alleged" — not that it has proven those defenses, nor that it has produced evidentiary support for each one. See *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004); *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010). The Rule 55(c) standard is intentionally lenient, favoring resolution on the merits over procedural default.

Here, SMS has set forth specific and plausible defenses grounded in facts and law,

10

RENEWED MOTION TO SET ASIDE DEFAULT

including:

- **Statute of Limitations:** Plaintiff's own pleadings and timelines raise serious questions as to whether claims against SMS fall outside the FCA's limitations window.

- **Settlement and Release:** DOJ previously entered into a settlement with Mr. Baumgartner that resolved billing conduct attributed to Synergy RX — the entity DOJ consistently focused on in pre-suit investigations. The SAC now improperly attempts to shift that same liability to SMS without explanation, and without reference to the settlement and its effects.

- **Failure to Satisfy Rule 9(b):** The SAC does not allege specific false claims attributable to SMS, nor does it identify responsible individuals, timeframes, or details showing knowledge or intent.

- **Lack of Causation or Involvement:** The SAC relies heavily on group pleading and offers no facts demonstrating that SMS — as opposed to other parties — was directly involved in the submission of claims or receipt of improper payments or had knowledge of Matthew Peters or his activities.

These defenses are not "boilerplate" or speculative. They are rooted in the SAC's deficiencies, the surrounding factual record, and Plaintiff's own conduct. To the extent more specificity could have been offered, SMS sought clarification from AUSA Thiess during extensive pre-motion discussions — including requests for detail regarding what claims, conduct, or timeframes Plaintiff believed SMS was actually responsible for. Those requests went unanswered. See **EXHIBIT B** – Mikel Declaration.

Plaintiff has not shown that SMS's defenses are legally invalid or facially implausible. Whether they ultimately prevail is a question for summary judgment or trial — not for resolving whether default should stand. Because SMS has raised several defenses that would, if proven,

11

defeat or substantially limit liability, this factor strongly supports vacating the default. See *Mesle*, 615 F.3d at 1094.

### V.  Plaintiff Has Not—and Cannot—Show Any Prejudice as Discovery in this Matter is Ongoing and SMS Will Immediately File an Answer Upon Graning of this Motion

Plaintiff can show no prejudice if this Motion is granted. This case is in the discovery phase, with an Order to Show Cause regarding Motions to Compel scheduled for July 30, 2025 (Dkt 87-88). The discovery issues relate to documents to be produced by several Matthew Peters defendants.

As set forth in the attached Declarations, SMS has preserved and is still in possession of documents related to the issues raised in this action. (See **EXHIBIT C –** Declaration of Brian Baumgartner and **EXHIBIT D** – Declaration of Dan Lago).

## CONCLUSION

Plaintiff's opposition fails to overcome the core procedural defect: SMS was never served with the operative Second Amended Complaint. That alone renders the default improper. Plaintiff's reliance on Rule 5(a)(2) is misplaced, and its effort to shift blame ignores its own litigation missteps and failure to respond to SMS's requests for clarification.

SMS did not act in bad faith, and its delay was the result of confusion caused by the Government's shifting positions — not culpable conduct. It has also identified multiple meritorious defenses, including lack of involvement and knowledge, a prior settlement, and the statute of limitations. Finally, Plaintiff can show no prejudice from permitting SMS to file an Answer to the Complaint and litigating this case on the merits.

**WHEREFORE**, SMS respectfully requests that the Court:

A. Set aside the default entered against it; and

B. Permit SMS to file its Answer and Affirmative Defenses within five (5) days of the Court's Order.

                    **Respectfully submitted,**

**Dated**: July 9, 2025          **THE HEALTH LAW PARTNERS, P.C.**
By:/s/Clinton Mikel
Clinton Mikel, Attorney for Defendant
Synergy Medical Systems, LLC

13

RENEWED MOTION TO SET ASIDE DEFAULT