ERIC GRANT
United States Attorney
DAVID E. THIESS
TARA A. AMIN
Assistant United States Attorneys
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814
Phone: (916) 554-2700
David.thiess@usdoj.gov
Tara.Amin@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW H. PETERS; *et al.*,<br><br>    Defendants. | CASE NO.  2:24-cv-00287-WBS-CKD<br><br>**UNITED STATES' RESPONSE TO DEFENDANT PETERS'S SUGGESTION OF BANKRUPTCY (ECF NO. 100)** |

On July 30, 2025, Defendant Matthew Peters filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.* *In re Peters*, No. 8:25-bk-12099-SC (Bankr. C.D. Cal.).  At the same time, Peters filed a Suggestion of Bankruptcy in this action, taking the position that this litigation is automatically stayed with respect to him, under 11 U.S.C. § 362(a).  (ECF 100.)  However, it is well-established that False Claims Act ("FCA") matters brought by the United States are exempt from automatic stay under 11 U.S.C. § 362(b)(4).  In cases like this, district courts have the jurisdiction to hold that the automatic stay does not apply under the statutory exemption and to proceed through judgment against the party that filed a bankruptcy petition.  *See United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008); *N.L.R.B. v. Continental Hagen Corp.*, 932 F.2d 828, 834 (9th Cir. 1991).  As a result, this case and the discovery sanctions sought by the United States under Federal Rule of Civil Procedure 37 remain ripe and are exempted from the automatic stay.

## I. THIS LITIGATION IS EXEMPT FROM AUTOMATIC STAY.

FCA cases brought by the United States are exempt from automatic stay under the Bankruptcy Code and may continue up through judgment, as an exercise of the government's police power under 11 U.S.C. § 362(b)(4). The automatic stay provision of the Bankruptcy Code states that a bankruptcy petition "operates as a stay, applicable to all entities, of … the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case]." 11 U.S.C. § 362(a). But, under the statute, the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police or regulatory power." 11 U.S.C. § 362(b)(4) ("the police or regulatory power exemption"). The purpose of the police or regulatory power exemption is to "prevent the bankruptcy court from becoming a haven for wrongdoers." *In re Berg*, 230 F.3d 1165, 1167 (9th Cir. 2000) (cleaned up and citation omitted).

Legislative history confirms that Congress intended to include FCA actions within the police and regulatory power exemption, stating that "[W]here a governmental unit is suing a debtor to prevent or stop violation of *fraud,* environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay." S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838; H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6299 (emphasis added).

Accordingly, courts including the Ninth Circuit have consistently and straightforwardly held that FCA and other claims brought by the United States to redress fraud are an exercise of its police or regulatory power and are exempt from the automatic stay. *See, e.g., United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008); *Universal Life Church, Inc. v. United States*, 128 F.3d 1294, 1298 (9th Cir. 1997) ("[A] civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception."); *In re Commonwealth Cos.*, 913 F.2d 518, 523-27 (8th Cir. 1990); *United States v. Vanguard Healthcare, LLC*, 565 B.R. 627, 632 (M.D. Tenn. 2017); *United States v. X, Inc.*, 246 B.R. 817, 818 (E.D. Va. 2000); *In re Mickman*, 144 B.R. 259, 260-62 (E.D. Pa. 1992); *United States ex rel.*

1  *Marcus v. NBI, Inc.*, 142 B.R. 1, 2 (D.D.C. 1992); *In re Selma Apparel Corp.*, 132 B.R. 968, 970 (S.D. Ala. 1991).

   Some courts have used two tests to evaluate whether a governmental action is exempt under the police or regulatory power exemption: (1) whether the action <u>solely</u> serves a "pecuniary interest" of the governmental unit, such that the action <u>directly conflicts</u> with the control of the property by the bankruptcy court, and (2) whether the action effectuates public policy. *Universal Life Church, Inc.*, 128 F.3d at 1297; *N.L.R.B. v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991). These tests are not necessary here, as it is well-established that FCA actions are broadly exempt from automatic stay under 11 U.S.C. § 362(b)(4). To the extent these tests are applied, though, each prong unequivocally points to the same conclusion, that this action is exempt from automatic stay.

   Under the first test, courts have consistently held that the United States's pursuit of monetary damages from fraud and other unlawful conduct does not constitute a pecuniary interest that would implicate the automatic stay. That consistent conclusion squares with the legislative history of the police or regulatory power exemption, which expressly states that actions for damages based on fraud are to be exempted from the stay. Indeed, under Ninth Circuit precedent, actions to address fraud are a "valid basis for invoking the [police or regulatory power] exception even when there is an additional pecuniary interest at stake." *Universal Life Church, Inc.*, 128 F.3d at 1298 (holding that the IRS's revocation of tax-exempt status for past violations of charitable purposes laws was exempt from the automatic stay). The FCA prevents parties from claiming federal funds under false, fraudulent, or otherwise unlawful circumstances, and is exactly the type of civil action that courts consistently find to be exempt from automatic stay when the pecuniary interest test is applied. *See, e.g., N.L.R.B.*, 932 F.2d at 833 (finding an NLRB action seeking backpay from an employer's unfair labor practices was designed to prevent employers from violating federal labor law and "is not a proceeding for the primary purpose of protecting the government's claim of entitlement to a pecuniary interest in the debtor's estate"); *In re First Alliance Mortgage Co.*, 263 B.R. 99 (9th Cir. B.A.P. 2001) (finding a state's consumer protection action seeking damages and civil penalties was exempt from automatic stay, even where the business at issue had closed before the lawsuit); *In re Commonwealth Cos.*, 913 F.2d 518, 524

3

UNITED STATES' RESPONSE TO
SUGGESTION OF BANKRUPTCY

(8th Cir. 1990) (noting an FCA judgment "would simply fix the amount of the government's unsecured claim against the debtors" and "would not … give the government a[ny] pecuniary advantage over other creditors of the debtors' estate."). The conclusion that an FCA action does not solely serve the government's pecuniary interest is especially apt where, as here, the United States' lawsuit significantly preceded the bankruptcy petition.

The public policy test distinguishes between actions that effectuate public policy (which are exempt from automatic stay) and those that simply adjudicate private rights (which are not). *N.L.R.B.* 932 F.2d at 833. FCA actions plainly effectuate public policy, including in this case. The United States has alleged FCA violations based on unlawful kickbacks that induced physicians to prescribe medications that were paid for by federal health care programs, among other types of unlawful kickbacks. Accordingly, courts applying the public policy test as to FCA defendants filing bankruptcy petitions have found that "civil actions by the government to enforce the FCA serve to inflict the sting of punishment on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem." *In re Commonwealth Cos.*, 913 F.2d at 527. As such, "[i]t seems inescapable then that a governmental action attempting to fix damages for violation of the FCA comes within § 362(b)(4)." *Id.* at 525.

For a similar reason, courts also find that related common law claims asserted by the United States in FCA actions are exempt from the automatic stay. *See, e.g., United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008) (exempting claims for unjust enrichment and common law fraud as part of an FCA action); *In re Mickman*, 144 B.R. 259, 260-62 (E.D. Pa. 1992) (finding FCA, common law fraud, unjust enrichment, payment by mistake, fraudulent conveyance, and alter ego claims exempt from the automatic stay). As the United States' unjust enrichment and payment by mistake claims in this case are premised on the same core of allegations as the FCA action, they are also exempt from the automatic stay. (See ECF 50, ¶¶ 297 to 303.)

## II.    THERE IS NO BASIS TO STAY THE CASE AS TO ANY OTHER DEFENDANT.

The bankruptcy petition at issue was filed solely on behalf of Defendant Peters. *See* Bankruptcy Petition, *In re Peters*, No. 8:25-bk-12099-SC, ECF 1 (Bankr. C.D. Cal.). The bankruptcy petition does

not mention any other defendant in this action, including any corporate entity, in any capacity. *Id.* Even if an automatic stay were to apply, it would not reach the other defendants. *See Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Products, Inc.),* 23 F.3d 241, 246 (9th Cir. 1994) (finding the automatic stay "does not protect non-debtor parties or their property" and does not affect "actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor") (cleaned up and citation omitted); *In re Miller*, 262 B.R. 499 (9th Cir. B.A.P. 2001) (finding that "Section 362(a)(1) applies only to actions against a debtor" and that plaintiff "was entitled to continue prosecution of [claims against the other defendant]").

### III. THE SANCTIONS SOUGHT BY THE UNITED STATES WITH RESPECT TO PETERS AND HIS CORPORATE AFFILIATES SHOULD PROCEED.

The United States' requests for sanctions on the discovery misconduct of Defendant Peters and his corporate affiliate Defendants (ECF 80, 90, 98, and 99) should proceed for three independent reasons. Each of these reasons is underlined by Peters's punctuating flaunt of this Court's orders—filing his bankruptcy petition 39 minutes before the Show Cause hearing, which the Court had ordered more than two months prior (ECF 87), followed by filing a Suggestion of Bankruptcy with this Court ten minutes later (ECF 100) and failing to appear at the hearing (ECF 101).

First, as the United States' FCA action is not subject to automatic bankruptcy stay, neither is adjudication of sanctions for the discovery violations that have occurred over an extended period. Those violations—involving protracted lack of candor, improper withholding of materials, and repeated disregard of Court orders—still require redress.

Second, even outside the context of FCA actions and other claims brought by the Government, the Ninth Circuit has found that the police and regulatory power exemption applies to sanctions for litigation misconduct. *See In re Berg*, 230 F.3d 1165, 1167-68 (9th Cir. 2000). In *Berg*, a cardiologist had sued a hospital and then appealed the verdict. The Ninth Circuit found that the appeal was frivolous and held that attorneys fee sanctions in relation to the appeal were not stayed against the plaintiff's lawyer who had filed a bankruptcy petition while the appeal was proceeding. The Ninth Circuit reasoned that "[a] litigant should not be allowed to delay the imposition of sanctions indefinitely by the

expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss." *Id*. at 1168 (citing *Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir. 1993)). That reasoning echoes powerfully here, given the timing of Peters's bankruptcy petition. The Ninth Circuit further reasoned in *Berg* that sanctions effectuate public policy because they protect the integrity of litigation in the courts. *Id.* In reaching that conclusion, the Ninth Circuit rejected the sanctioned lawyer's argument that attorneys' fees should not qualify for the police and regulatory power exemption because they would be awarded to a private litigant. The *Berg* Court's reasoning applies in this case as well, but with stronger application because no litigant would financially benefit from the sanctions sought.

Third, independently of the police or regulatory power exemption, the Ninth Circuit has also recognized an exception to the automatic bankruptcy stay for civil contempt and other sanctions based on violations of prior court orders. *See David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir. 1977); *see also In re Dumas,* 19 B.R. 676 (9th Cir. B.A.P. 1982). In *David*, the United States Magistrate Judge had found that defendant Hooker Music failed to produce materials and to answer plaintiff's interrogatories, and compelled production. *Id*. at 415. Hooker Music continued not to answer the interrogatories and then filed a bankruptcy petition. The Court issued an order to show cause why Hooker Music and its president should not be held in civil contempt, which was appealed. *Id.* The Ninth Circuit found the district court's orders to be "entirely proper and consistent with" the Bankruptcy rules, for two reasons. *Id.* at 417. First, the purpose of the automatic stay is to protect the party filing for bankruptcy and to "relieve the courts of needless litigation," but a civil contempt order for prior violations does not contravene that purpose "as it does not involve a determination of the ultimate obligation of the bankrupt nor does it represent a ploy by a creditor to harass him." *Id.* at 417-418. Second, even where an automatic stay applies, it neither dismisses pending lawsuits against the debtor nor removes jurisdiction from the courts in which those suits are pending. Thus, even if a suit is stayed, that stay does not apply to "contempt proceedings arising out of disobedience of a … court order made prior to the stay." *Id.* at 418; *see also In re Dingley* 514 B.R. 591, 600 (9th Cir. B.A.P. 2014) ("[A] contempt action for

UNITED STATES' RESPONSE TO
SUGGESTION OF BANKRUPTCY

[noncompliance with] court-ordered sanctions is exempted from the automatic stay unless the proceeding turns on the determination or collection of the underlying judgment."). In other words, contempt and similar discovery sanctions do not interfere with the property in the purview of the bankruptcy court, but merely "vindicate [the district court's] dignity which had been affronted by the contumacious conduct of a person who ignored its order." *David*, 560 F.2d at 418 (citation omitted).

Nearly all of the discovery sanctions sought by the United States in this matter are non-monetary. With respect to civil contempt sanctions, the United States acknowledges that the contemnor's financial resources is one factor in determining the amount of the daily fine to be imposed, alongside the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994); United States' Proposed Findings, Recommendations, and Certification Re Civil Contempt (ECF 99). Here, despite Peters's bankruptcy petition, a daily fine remains important if compliance is to be coerced, given the extent of the discovery violations and the magnitude of the potential liability Peters faces in this matter. The United States also has concerns that the financial information listed in the bankruptcy petition may not be reliable, because, among other reasons, Peters disclosed no ownership interest in any business entity, including any of the corporate entities named as defendants in this action which his counsel admitted to this Court at a May 21, 2025 hearing that Peters has owned and controlled in practice.

Peters's bankruptcy petition does not undo his discovery violations or permit him to further evade his ongoing obligations in this litigation. Peters and his affiliated corporate entities have entrenched their longstanding noncompliance with discovery rules and this Court's Orders. The Court should proceed with adjudicating the sanctions requested by the United States.

**IV. CONCUSION**

The Court should find that the automatic stay does not apply to any of the claims brought by the United States in this matter, either against Peters or any other defendant. In addition, the pending discovery sanctions for Peters and his affiliated corporate entities remain ripe for adjudication and should be granted as requested.

| | | |
|---|---|---|
| Dated: August 13, 2025 | | Respectfully submitted, |

                                                  ERIC GRANT
                                                  United States Attorney

                                 By:    /s/ *David E. Thiess*
                                                DAVID E. THIESS
                                                TARA A. AMIN
                                                Assistant United States Attorneys